MODERN WOODMEN OF AMERICA v. MARY J. JAMESON.

1. LIFE INSURANCE — *Forfeiture not Favored by the Courts.* As in all other cases, forfeiture of the insurance provided by mutual benefit associations is not favored by the courts. They, in construing the conditions of membership when a forfeiture is claimed, will preserve, if possible, the equitable rights of the holder of the certificate of membership. •

2. BENEFIT CERTIFICATE, *Not Deemed Void, nor Member Suspended.* Where the by-laws of a mutual benefit life association provide that, if a member fails to pay an assessment before the first day of the following month after he receives notice thereof, he shall stand suspended, and during his suspension his benefit certificate shall be void, and that the head clerk of such association shall mail to such member a notice of his suspension, informing him what it is necessary for him to do to become reinstated, *held,* that if, after the non-payment of such assessment, the head clerk failed to mail

the notice of suspension, as required by the statute, or other-
wise notify such member of his suspension, and the association
makes a subsequent assessment upon him and thereby treats him as
a member, and the local agent of the association receives payment
of such assessments, after the member is dead, from a friend who
supposed him to be in a swoon only, and the agent in good faith
reinstates such member, and the association does not return the
money received upon such assessments to the beneficiary, or to the
friend paying the same, the benefit certificate cannot be considered
void, or the member deemed suspended at the time of his death.

*Error from Franklin District Court.*

THE Modern Woodmen of America is a mutual life insur-
ance company, incorporated under the laws of Illinois, and
doing business in the state of Kansas.    July 24, 1888, said
company executed and delivered to S. W. Jameson, husband
of the defendant herein, a benefit certificate, by the terms of
which it agreed, upon certain conditions, to pay to said Mary
J. Jameson the sum of $2,000, upon the death of her said
husband.    Said S. W. Jameson died September 20, 1888.
Suit was begun on said benefit certificate by Mary J. Jameson,
the beneficiary therein named, on the 6th day of February,
1889.    June 14, 1889, the cause was tried by the court, which
made certain findings of fact and conclusions of law, upon
which, after overruling a motion for a new trial, it entered
judgment in favor of said plaintiff and against said defendant
company, for the sum of $2,073.89, to the rendition of which
judgment the defendant excepted, and brought the case to
this court.    The case was heard on February 5, 1892, and
at the session of the court in March following it was decided,
and there was filed herein an opinion, (syllabus and opinion
by STRANG, C.,) recommending that the judgment of the court
below be reversed, and that the case be remanded for further
proceedings.    By the Court it was so ordered — all the Jus-
tices concurring.    The syllabus therein formulated and de-
clared to be the law is as follows:

" Where a member of a mutual life insurance company is
suspended for non-payment of assessments, and neglects dur-
ing his life-time to secure his reinstatement, in accordance

with the terms of his benefit certificate and the provisions of the order, his restoration to membership cannot be effected after his death by payment of the sum due from him to the company at the time of his death, though the period within which, if alive, he could have secured his reinstatement has not yet expired."

On March 22, 1892, the defendant in error filed a motion for a rehearing, which was argued on April 8 thereafter. On July 8, 1892, the court sustained the motion, and handed down the new syllabus, *supra*, and the opinion, *infra*.

*J. W. Deford*, for the motion.

*Mechem & Smart*, and *Hess & Johnson*, contra.

The opinion of the court was delivered by

HORTON, C. J.: It appears from the record that the trial court found as a conclusion of law that "S. W. Jameson was not, at the time of his death, suspended from the order of the Modern Woodmen of America, as no notice of suspension was mailed to him as required by the by-laws." In the opinion handed down by STRANG, C., this conclusion of law is held erroneous, upon the ground that actual notice of suspension was given by delivering the notice in person to S. W. Jameson, instead of depositing it in the post office properly stamped and addressed. This statement or conclusion in the opinion grows out of a misapprehension of the record, and the result thereof seriously affects the decision rendered upon the opinion. The local clerk of Fidelity camp handed personally to S. W. Jameson, on August 7, 1888, a written notice of an assessment of $1.05 made by the head camp for August, 1888, and payable on or before September, 1, 1888. The by-laws provide, among other things, that the head clerk "shall, as soon as he has knowledge that any neighbor is suspended, from any cause, mail to said neighbor a notice, post-paid, to his last known address, stating that he stands suspended upon the books of the head camp, and also informing him what it is necessary for him to do to become reinstated." This is the notice of suspension referred to in the seventh finding of the

trial court, and also in the conclusion of law. The head clerk never mailed or personally delivered to S. W. Jameson the notice prescribed in the section quoted. As in all other cases, forfeiture of the insurance provided by mutual benefit associations is not favored by the courts. They, in construing the conditions of membership when a forfeiture is claimed, will preserve, if possible, the equitable rights of the holder of the certificate of membership. (*Miner v. Michigan Mut. &c. Ass'n*, 63 Mich. 338; *Gunther v. New Orleans &c. Ass'n*, 40 La. An. 777; 8 Am. St. Rep. 554.)

Jameson had paid all his dues to December 31, 1888, and after he had made default upon the assessment of August 7, 1888, the head camp assessed him for September $1.05, which was due October 1, 1888. A member of Fidelity camp, after Jameson was dead, but when his wife and such member supposed him to be in a swoon only, paid the August and September assessments. These assessments were received by the local clerk on September 20, 1888. All of these parties acted in good faith, and the money so paid has never been returned, or offered to be returned, either to Mrs. Mary J. Jameson, the beneficiary, or to the member of the camp who paid the same. If payment had been tendered the day before the death of the insured, such payment would have been accepted. The forfeiture, if any, arose upon the non-payment of the August assessment on September 1, 1888, but it is clear that the association did not consider the benefit certificate forfeited, or Jameson suspended, on account of the non-payment of the August assessment, from the fact that the head camp made another assessment upon Jameson in September, 1888, which was due the 1st of October, 1888. The association had the right to waive the forfeiture and continue the benefit certificate in force. The by-laws of the association also provided that—

"If all arrearages of every kind are paid up within three months, and the clerk is satisfied that his health is not impaired, a neighbor shall thereby be restored, and his benefit certificate made binding as soon as said payment is received

and recorded by the clerk. If the clerk has reason to believe that the health of the neighbor is impaired, he shall submit the matter to the camp, who shall decide the matter by a two-thirds vote. Should any clerk receive payment of arrearages and reinstate any neighbor whose health at the time is impaired, or who has been known to use intoxicants or opiates to such an extent as to become frequently intoxicated, or under the influence of the same, or who has made false representations in his application to become a member, unless said clerk shall have first submitted the matter to his camp, and been authorized by a two-thirds vote of the members present so to do, he shall, upon conviction thereof, after an investigation by his camp, be expelled."

Under these provisions, the local clerk had the power to reinstate Jameson after a forfeiture, whether his health was impaired or not. He might subject himself to the penalty of expulsion by so doing, but he could effectually do the act. In view of the failure of the head clerk to give or mail the notice of suspension, as prescribed by the by-laws, the assessment made on Jameson in September, after the assessment of August, 1888, was past due, the acceptance and retention of the moneys for the August and September assessments and the reinstatement made by the local clerk in good faith, we must hold that the association waived the forfeiture of the benefit certificate, and therefore the judgment of the trial court must be affirmed. (*The State v. Natl. Ass'n, etc.*, 35 Kas. 51; *Protective Union v. Whitt*, 36 id. 760; *Am. Mut. Aid Soc. v. Helburn*, 85 Ky. 1; *Dennis v. M. B. Ass'n*, 120 N. Y. 496; 17 Am. St. Rep. 600; *Howell v. K. L. Ins. Co.*, 44 N. Y. 276; *M. M. B. Ass'n v. Beck*, 77 Ind. 203; 40 Am. Rep. 295, and cases cited; *B. & M. M. B. Ass'n v. Stapp*, 77 Texas, 517; 19 Am. St. Rep. 772; *McDonald v. Supreme Council, etc.*, 78 Cal. 49; *Millard v. Supreme Council, etc.*, 81 id. 340; *Stylow v. Wise, Odd Fellows, etc.*, 69 Wis. 224; 2 Am. St. Rep. 738.)

The judgment of this court, heretofore entered upon the opinion of the commission, will be set aside, and further proceedings had in accordance with the views herein expressed.

All the Justices concurring.