[No. 17920.  Department Two.  December 10, 1923.]

EDA PETERSON, *Appellant*, v. MODERN WOODMEN OF
AMERICA, *Respondent*.[1]

BENEFICIAL ASSOCIATIONS (2)—FORFEITURE OF MEMBERSHIP—
WAIVER—AGENCY OF LOCAL SECRETARY.  The society is estopped to
assert that a certificate of beneficial insurance is rendered null and
void by the assured's excessive use of intoxicating liquors, as pro-
vided in the contract, where, with knowledge of such fact, the col-
lecting officer of the local camp collected and transmitted subsequent
assessments and dues which were retained by the home office; and it
is immaterial that the contract and by-laws provided that no officer
of any local camp shall waive any of the provisions of the contract,
nor shall knowledge of such officer be held to be the knowledge of
or notice to the head camp or its officers, and that the retention of
assessments or dues shall not constitute a waiver of any of the pro-
visions of the contract  (BRIDGES, J., dissenting).

Appeal from a judgment of the superior court for
Pierce county, Clifford, J., entered February 17, 1923,
upon findings in favor of the defendant, in an action
to recover mutual benefit insurance.    Reversed.

*Louis J. Muscek* and *Blackburn & Gielens*, for appel-
lant.

*J. Charles Dennis, Truman Plantz, Frank H. Kelley*,
and *George H. Davis*, for respondent.

MITCHELL, J.—This is an action on a benefit certifi-
cate, issued to Oscar Peterson by the Modern Wood-
men of America, a fraternal society.   His surviving
wife, Eda Peterson, named as beneficiary in the con-
tract, brought the suit, and has appealed from a judg-
ment against her.

The case is presented on the findings of fact, to
which no exceptions were taken.   Exceptions in writ-
ing were filed to the conclusions of law.

[1]Reported in 220 Pac. 809.

The material findings of fact are in effect as follows: (1) The decedent became a member of the order and took out the contract of beneficial insurance on August 31, 1909, his wife, the plaintiff, being named as the beneficiary. (2) By the terms of the contract, the by-laws of the society became a part of the contract of insurance. The by-laws provide:

"Sec. 18. Prohibition Against Intemperance.—If any member of this Society, heretofore or hereafter adopted, shall become intemperate in the use of intoxicating liquors, or in the use of drugs or narcotics, or if his death shall result directly or indirectly from his use of intoxicating liquors, drugs or narcotics, then the certificate held by said member shall, by such acts, become and be absolutely null and void, and all payments made thereon shall be thereby forfeited.

"Sec. 44. No Waiver of Any By-Laws.—No officer of this Society, except as provided in Sec. 123 hereof, nor any local camp or officer, or member thereof, is authorized or permitted to waive any of the provisions of the by-laws of this Society which relate to the contract between the member of the Society, whether the same be now in force or hereafter enacted, 'Neither shall any knowledge or information obtained by, nor notice to any local camp or officer or member thereof, or by or to any other person, be held or construed to be knowledge of or notice to the Head Camp or the officers thereof, until after said information or notice be presented in writing to the head clerk of the Society.

"Sec. 65. No Waiver by Retention of Assessments or Dues.—The retention by the Society of any assessment or dues paid either before or after the death of any member for his reinstatement, or of any assessment or dues paid subsequently thereto, shall not constitute a waiver of any of the provisions of these by-laws.

"Sec. 279. No Local Camp, or Officer Thereof, Shall Waive By-Laws.—No local camp or any of the officers thereof shall have the right or power to waive any of the provisions of the by-laws of this Society."

(4) Soon after joining the order, the decedent became intemperate in the use of intoxicating liquors, and for about two years before his death his use of them became so excessive that it interfered with his business and disrupted his domestic relations to the extent that his wife brought an action for divorce against him on the ground that be had been guilty of habitual intemperance for more than a year. At the conclusion of the hearing of the divorce action, on January 25, 1921, the court orally found the allegations of the complaint to be true, and directed findings of fact, conclusions of law and a decree to be prepared accordingly. That, about two hours thereafter, he went to the home of his wife, and after a short conversation, shot himself, causing his death on the following day. (5) The fact that the decedent had been intemperate in the use of intoxicating liquors and for two years prior to his death used them to excess was known to some individuals, the clerk and some of the officers of the local camp of the defendant order, of which local camp decedent was a member; but that no action thereon was taken by the local camp nor was any of such facts reported to the head camp of the order, nor to any officer thereof. The decedent, at all times, paid all dues and assessments required and called for by his membership in the order and under the contract of insurance, and such payments were received by a proper officer of his local camp and transmitted in due course to the proper officer of the head camp.

Finding number 3 is not set out herein, because we agree with the statement contained in one of the court's conclusions of law that the matter contained in that finding is immaterial to the decision of the case; except to state that it appears therefrom that the clerk

of the local camp was the proper officer to receive assessments and dues from the members.

The principal contention of the respondent, that manifestly was approved by the trial court, is that the decedent's intemperate and excessive use of intoxicating liquors constituted a breach of his contract and rendered it inoperative and void; and that, by the terms of the contract and the provisions of § 7278, Rem. Comp. Stat. [P. C. § 3107], the failure of the local camp to act upon the knowledge of decedent's intemperance and its failure to communicate that intemperance to the head camp of the order, did not constitute a waiver or waivers of the provisions of the contract, and that the acceptance of assessments and sums due under the contract did not constitute a waiver of its terms and conditions.

Whatever may be the rule in other jurisdictions, cases from which have been freely cited and urged upon us by the respondent, it appears that the cases of *Schuster v. Knights & Ladies of Security,* 60 Wash. 42, 110 Pac. 680, 140 Am. St. 905, and *Shultice v. Modern Woodmen of America,* 67 Wash. 65, 120 Pac. 531, are decisive of this case in favor of the appellant, unless § 7278, Rem. Comp. Stat. [P. C. § 3107], has sufficient effect and application to overcome the rule of those decisions.

The *Schuster* case was one wherein the by-laws of the society became a part of the contract of insurance. They provided that the certificate of each member should *ipso facto* stand suspended, without notice, if his assessment was unpaid the last day of the month; that no right under it could be restored until it had been duly reinstated, which might be done within sixty days from the date of suspension by payment of all arrearages, provided

". . . . that he be in good health at the time of reinstatement; provided further, that the receipt and retention of such assessments or dues in case the suspended member is not in good health shall not have the effect of reinstating said member or of entitling him or his beneficiaries to any rights under his benefit certificate."

The by-laws further provided:

" 'The National Council shall not be liable for the illegal receipt of arrears of beneficiary or reserve fund, or National Council general funds or assessments, from suspended members; and the receiving of any such arrears, and receipting therefor by any officer of a subordinate council and the reinstatement of any suspended member except as provided in the laws of the order, shall not be binding on the National Council'; and that a member in default in the payment of his assessments for more than sixty days and less than six months can only be reinstated by the payment of all arrearages, and by presenting a health certificate approved by the company's national medical examiner."

Upon the facts in the case, it was held that such a society ratifies the acceptance of dues and is estopped from claiming that the member was not reinstated within the time limit by payment if the member was in good health, where the society had notice at the time that the member was not in good health, and the society nevertheless retained the payments for over a year after the death and did not tender repayment until after suit was commenced. Concerning the by-law which provided that the receipt and retention of dues of a member not in good health shall not reinstate the member it was said:

"We are not unmindful of the language of the by-law quoted, but we are unwilling to stand sponsor for a principle of law which would uphold such a stipulation. The language seemingly has reference to the retention of assessments by local officers. But if it in-

cludes the retention by the respondent, the injustice of the provision is too glaring to receive judicial sanction.''

And further, it was held that a local secretary, authorized to collect assessments, is the agent of the society.

In the case of *Shultice v. Modern Woodmen of America, supra,* it was said:

''The by-laws provide that a beneficial member who shall fail to pay a benefit assessment on or before the last day of the month following the levy thereof 'shall *ipso facto* become suspended, *and during such suspension his benefit certificate shall be absolutely null and void.*' They further provide that any member so suspended may be reinstated within sixty days from the date of suspension, by a payment of all arrearages, including current assessments, etc., provided he be in good health at the time of the reinstatement; 'provided, further, that the receipt and retention of such assessments or dues in case the suspended neighbor is not in good health or is engaged in any such prohibited occupation, shall not have the effect of reinstating said member or entitling him or his beneficiaries to any rights under his benefit certificate.' . . . The by-laws also provide that no local camp, nor any of its officers, shall have the power to waive any by-law, and that the clerk of the local camp is the agent of that camp and not the agent of the society, and that no act or omission on his part shall create a liability against the appellant or waive any of its rights.''

The defense in the case was suspension and that there had been no proper reinstatement. The opinion states:

''The court instructed the jury that, notwithstanding the provisions of the by-laws, the appellant is liable upon the certificate, if it, through its local agent, received and retained the assessments after the suspension, with knowledge that the deceased was not in good health; that the knowledge of the local agent having

authority to receive and collect delinquent assessments was the knowledge of the appellant; that the appellant could waive the provisions of the by-laws with reference to the suspension of a delinquent member, and that it is liable to the respondent if it received and retained delinquent assessments with knowledge of the good or bad health of the deceased.''

Of the instruction, the opinion states:

''We think the instruction correctly states the law. The appellant, as we have seen, is a foreign corporation. It can only act through its local camps. The clerk of the local camp is the officer who collects, receipts for, and transmits the assessments. The appellant has no other fund from which to pay its death losses, and no other means of collecting assessments. A corporation can act only through its officers and agents. This court has consistently and steadfastly adhered to the view that it will not permit an insurance company, whether it be an old line company or a fraternal organization, to change the fundamental law of agency by contract, and thus exonerate itself from liability for the acts of those who are in fact and law its agents.''

Many cases on the subject are then cited and reviewed, and among others the case of *Hart v. Niagara Fire Ins. Co.*, 9 Wash. 620, 38 Pac. 213, 27 L. R. A. 86, as follows:

''If, under the legal, well established and universally understood definition of agency, the solicitor is in law and in fact the agent of the company, it should not be allowed to escape its responsibilities by a simple device of words which flatly contradict the true meaning of the contract.''

Following the review of the cases, the opinion states:

''It follows, we think, as a corollary, that the knowledge of the local agent will be conclusively held to be the knowledge of the appellant without regard to whether he communicated the facts to it. Any other

view would destroy the benefit flowing from the fact of notice to the agent.''

Then by way of conclusion upon the facts, it was said:

''The appellant, with knowledge of the suspension of the deceased, and with knowledge through its agent of the fact that the deceased was insane, accepted the assessments for the months of June, July, and August, in the month of September, and thereafter accepted and retained his monthly assessments to the date of his death.   This clearly constituted a waiver of the by-laws limiting the right to reinstatement to those in good health.''

The opinion then repeats the holding in the *Schuster* case with reference to the provision of a contract attempting to repudiate the legal effect of the retention of assessments, and finally the observation is made that, while there are authorities cited to the contrary, from other jurisdictions,

''This court, however, as we have seen, has held from the beginning that it will determine both the question of agency and the power of the agent from the actual, rather than the fictitious, relations of the parties.''

The two cases, and others therein cited, are authority for the rule that a certificate of fraternal insurance which becomes suspended and therefore absolutely null and void, by the terms of the contract, just as in the present case the excessive use of intoxicating liquors by a member shall cause his certificate to become and be absolutely null and void, by the terms of the contract, may be reinstated in spite of facts that prohibit. it under the terms of the contract if those facts are known to the collecting officer of the local camp who collects subsequent assessments and dues that are transmitted to and retained by the home office, upon the theory of ratification by and estoppel against the

society, because, under the law of agency the knowledge of the collecting officer of the local camp is the knowledge of the society, and that, notwithstanding an attempt to provide otherwise in the contract. It is said of the knowledge of the clerk of the local camp that it will be conclusively held to be the knowledge of the society without regard to whether he communicated the facts to it.

Nor does the fact that the contract, through the by-laws of the society, provides that the knowledge of or notice to an officer of the local camp, or of any other person be held or construed to be knowledge of or notice to the head camp or the officers thereof until after such information or notice be presented in writing to the head clerk of the society, in any way change the result. Who shall present the information or notice in writing to the head clerk of the society? The contract of the parties and the findings of fact are silent upon that subject. Surely it is not to be supposed that the defaulting member shall do so, nor that an interloper shall. The clerk of a local camp is one of its officers. In this case such clerk had knowledge of the facts in question. If the clerk is supposed to furnish the information to the head clerk of the society, who is responsible if he neglects to do so? Whose agent is he? We have seen that he is the agent of the company, even though the contract with a member should attempt to speak to the contrary. The situation presented by such terms of a contract is altogether equivalent to saying that the knowledge of a general agent is not the knowledge of his principal unless and until the general agent gives the information in writing to his principal. The company "shall not be allowed to escape its responsibilities by a simple device of words which flatly contradicts the true meaning of the contract."

Appellant calls attention to § 7278, Rem. Comp. Stat. [P. C. § 3107]; § 225 of the insurance code, Laws of 1911, p. 290, and then referring to the provisions of the by-laws of respondent upon the subject of waiver by a local member or officer, counsel say in their brief:

"So far as we have been able to ascertain, this court has not spoken on this question since the enactment of the statute above referred to and we have no doubt that the court will decide that, notwithstanding its previous holdings, it is bound by the statute to hold that said by-law is valid."

The statute is as follows:

"The constitution and laws of the society may provide that no subordinate body, nor any of its subordinate officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members."

Very clearly it refers to the power or authority of a subordinate body, its officers and members to waive any of the provisions of the laws and constitution of the society. There is no conflict, however, between the statute and our decisions. It must be kept in mind that the great, outstanding thought of the decisions in question is not one of waiver at the instance of a subordinate lodge or officer, but, on the contrary, the positive assertion that, by force of the dominating law of agency, the knowledge of the particular officer of a subordinate lodge or camp is necessarily the knowledge of the head camp or society and that, being in the possession of that knowledge, if the society thereafter receives and retains assessments and dues transmitted to it after being collected by the subordinate officer or agent, it thereby ratifies the acceptance by its agent of those assessments and dues and is estopped from denying liability. Or, if the word "waiver" (so

often employed in this class of law for the word "estoppel") must be used, it is a case wherein the society itself, and not the subordinate camp or officer, because of the society's own knowledge and conduct, through the knowledge and conduct of its agent, will not be permitted to say that it has not waived the provisions of the contract the breach of which by a member would otherwise defeat a right of recovery on behalf of the beneficiary.

Lastly, it is claimed by the respondent that there has been no waiver of its second defense, namely, that Peterson's death resulted directly or indirectly from his intemperance. There was no such finding by the trial court.

Reversed, with directions to enter judgment for the appellant.

MAIN, C. J., FULLERTON, and PEMBERTON, JJ., concur.

BRIDGES, J. (dissenting)—Parties may contract as to the extent of the agency of a third party. Here they have contracted that the local clerk should be the agent representing both the appellant and the respondent in receiving assessments and dues. They have also expressly contracted that the clerk shall not be the agent of the appellant as to information he may receive concerning the intemperate habits of the deceased. The by-laws (which were made a part of the certificate of insurance) expressly so provided, for they state that

". . . . neither shall any knowledge or information obtained by nor notice to any local camp or officer or member thereof . . . . be held or construed to be knowledge of or notice to the head camp or the officers thereof. . . ."

The parties having so expressly contracted, and having the right, in my opinion, so to do, I am unable to concur in the views of the court. I therefore dissent.