[No. 22723.   Department Two.   May 12, 1931.]

L. KENT MILLIS, *Respondent*, v. CONTINENTAL LIFE INSURANCE COMPANY, *Appellant*.[1]

*Will J. Griswold* and *Curtis E. Abrams*, for appellant.

*F. M. Hamilton*, for respondent.

MILLARD, J.—A life insurance policy issued by the defendant upon the life of the plaintiff obligated the

[1]Reported in 298 Pac. 739.

insurer to pay to the insured, for total and permanent disability "which must occur and originate while this policy is in full force, after one year's premium has been paid," a monthly income of one hundred dollars, and to waive payment of premiums during the continuance of the disability. This action was brought to enforce payment of benefits under that provision of the contract. The trial of the cause to a jury resulted in a verdict in favor of the plaintiff. From judgment entered on the verdict, motions for judgment notwithstanding the verdict and a new trial having been overruled, the defendant appealed.

On February 27, 1924, the appellant issued to the respondent a life insurance policy. That policy provided, in addition to indemnity in case of death, for the payment of one hundred dollars monthly in the event of total and permanent disability of the insured. The pertinent provisions of the insurance contract read as follows:

"This policy and the application therefor, copy of which is attached hereto, constitute the entire contract. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid the policy unless it is contained in the written application therefor."

". . . This policy . . . shall be incontestable after one year from date of issue if the premiums are duly paid, except as provided under the provisions or conditions relating to benefits in the event of total and permanent disability. . . ."

". . . Total and permanent disability may be due either to bodily injuries or to disease, which must occur and originate while this policy is in full force, after one full year's premium has been paid, and must be such as to prevent the insured then and at all times thereafter from engaging in any occupation whatsoever, for remuneration or profit. Total disability, as defined above, which exists and has existed continu-

ously for not less than three months shall be presumed to be permanent."

Respondent was examined for the insurance at Ashland, Kentucky, by appellant's medical examiner, Dr. William De Bord, who had known respondent for more than twelve years prior to the date of the examination. No testimony of this physician is found in the record before us.

The respondent was, at the time of his examination and had been for a long time prior thereto, a regularly employed agent of appellant, and engaged in writing all forms of life insurance sold by the appellant. Prior to his employment by the appellant as a life insurance solicitor, the respondent had been engaged in the business of writing life insurance from 1912. From January 1, 1920, until the date of the policy involved in the case at bar, the respondent devoted his entire time to the business of selling life insurance. His ability as a life insurance salesman is reflected by the fact that, for a number of years prior to the date he was insured by the appellant, the respondent's income from insurance commissions approximated six thousand dollars annually.

At the time he made application for the insurance, the respondent submitted to the appellant's medical examiner X-ray photographs taken of his lungs in 1920. In his application, the respondent stated that he was then free from all disease, and that he had never been afflicted with any disease. He further answered questions in the application as follows:

"To what extent if any do you use alcoholic drinks? (Give daily or other average.) No. Have you ever taken treatment for any drug or liquor habit? No. Are you now in good health? If not, state cause of ill health. Yes. Has applicant a hernia? No. Kind? None. Is it reducable? None. Is a suitable truss

worn? None. The amount of insurance now in force on my life is None.''

Respondent continued in the employment of the appellant until about January 1, 1925, when he became ill. That illness, which appears to have been as much mental as physical, progressed to such an extent that, on or about February 8, 1925, the respondent was committed to the Eastern State Hospital for the Insane at Lexington, Kentucky, which is about one hundred and forty miles from Ashland and Catlettsburg, Kentucky, respondent's home and place of business. He was committed to that institution as a patient suffering from dementia of such a serious nature as to require both restraint and special medical treatment. He remained in the hospital ninety-three days, and was paroled May 12, 1925, returning to his father's home. He remained at his father's home until October 8, 1925, and during July and August of that year entered into a contract with the Union Central Life Insurance Company and its general agent under whom he had previously solicited insurance for that company. He wrote five or six policies of insurance for that company, and a few policies for other companies.

About October 8, 1925, he was returned to the Eastern State Hospital at Lexington, where he remained until December 13, 1925. He again returned to his father's home where he remained until April 6, 1926, on which date he was again returned to the hosiptal for the insane, remaining there for sixteen days. He was released from that institution April 22, 1926, and departed for Bellingham, Washington, which has been his residence ever since. His wife and two children removed from Ashland, Kentucky, to Bellingham, Washington, about April, 1925, where they have since resided.

At the time of his commitment to the hospital for the insane, his father was appointed as respondent's guardian. On March 18, 1925, that guardian applied in respondent's behalf to the appellant for total and permanent disability benefits under the terms of the insurance contract. The recitals in that application, so far as material, are as follows:

"Give date on which you first consulted a physician or surgeon for the illness, disease or injury which led up to your present disability, together with the names and addresses of all physicians or surgeons consulted since that time."

"Date. Do not know. Names and addresses. First I know Feb. 6, 1925. C. F. Bond, Catlettsburg, Ky., and on Feb. 8, 1925, Dr. A. C. Bond, Catlettsburg."

"Describe fully your disability, stating all particulars and giving all causes leading up to same.

"Particulars. Drs. pronounced tuberculosis and he was addicted to use of drugs. Causes. Habit had been formed from using to allay suffering."

"Have you had any illness, disease or infirmity, or injury other than as mentioned above?

"Not that I know of."

"Are you wholly, continuously and permanently disabled? and (b) Will you be unable for the remainder of your life to perform any work or conduct any business for gain, compensation or profit?

"That seems to be the case. He is in a state institution and appears to be hopeless case."

"(a) When did you quit work entirely? (b) for what proportion of each day are you confined to your bed and to your house? (c) Give name and address of the physician who is now attending you (if more than one is employed, give all names with addresses).

"(a) Has not worked since Nov. 1924. (b) All the time. Is in hospital at Eastern State Hospital, at Lexington, Ky. (c) Dr. Thompson and Dr. Davenport at the institution."

The report of Dr. Chas. F. Bond, the attending physician, who personally knew the insured and had been his

family physician for five years, is attached to the application and reads as follows:

"(a) Date you were first consulted. (b) Condition of patient at that time. (c) When did the first symptoms appear? (d) Is patient still under your care? If not, give date of last prescription or visit.

"(a) 1920. (b) General debility—'rundown.' (c) 1920. (d) No. Feb. 9, 1925.

"Is the disease acute? Chronic? Venereal? (b) To what do you attribute the origin of the disease? (c) Diagnosis and symptoms of disease, or description of injury causing the disability, (d) Present status.

"(a) Chronic. (b) ? (c) Probably T. B. (d) Progressive.

"(b) Have any chemical, microscopical or serological tests been made?

"(b) Not by me.

"(a) In your opinion will the insured either wholly or partially recover the use of his body? (or mind if illness is mental) (b) Are there any unusual features in the case which would prolong recovery? If so, what are they?

"(a) ? (b) No.

"Do you believe the insured has become wholly, continuously and permanently disabled and will for life be unable to perform any work or conduct any business for compensation or profit?

" ?

"Do you know of any reason why the claim for Total and Permanent Disability is not a fair one?

"No."

The foregoing application and physician's report were received by the appellant at its home office April 15, 1925. The benefits were not allowed by appellant. The record does not disclose whether appellant made any investigation of respondent's guardian's claim. Other than the filing of the claim, neither respondent or his guardian made any further attempts to obtain the disability benefits. Respondent paid, at the time the policy was issued, one-half of the first annual pre-

mium, and on or about August 9, 1924, paid the remaining one-half. That respondent paid the full premiums in 1924, 1925 and 1926 is not disputed.

On February 9, 1925, the respondent over his own signature, made application to the Union Central Life Insurance Company for total and permanent disability benefits. It appears that in 1920 the Union Central Life Insurance Company issued a policy upon the life of the respondent in the amount of seven thousand dollars, with total and permanent disability features. That policy was in effect on February 27, 1924, when appellant issued the policy in controversy upon the life of respondent. It will be remembered that, when answering the question in the application for life insurance in appellant company "The amount of insurance now in force on my life?" the respondent answered "None." Respondent explained that this was an oversight, and that he had no intention of deceiving appellant. Respondent later abandoned his claim on the Union Central Life Insurance Company for disability benefits. That application reads as follows:

". . . became wholly disabled as a result of tuberculosis, Asthma, Hernia & other complications including Caries of the Spine, & etc. and that in consequence the said insured has been wholly disabled from the 14th day of June, 1924, and that he will be permanently, continuously and wholly prevented thereby for life from pursuing any and all gainful occupations; that in consequence of such disability the affiant now makes claim for the benefits provided in said policy in the event of total and permanent disability. Affiant further states that the insured has no other disability or health insurance on his life except as follows:"

No statement appears that the applicant was also insured by appellant company. The physician's statement attached to the foregoing application reads as follows:

"Diagnosis and symptoms of injury, infirmity or disease causing disability. Tuberculosis. Diagnosis is based upon History and Physical findings. In addition I am told that laboratory examination is positive. Also X-ray is positive. Physical findings are those of active T. B. involving both lungs. Is the insured wholly disabled and will he be permanently, continuously and wholly prevented thereby for life from pursuing any and all gainful occupations? Yes, I believe his case is progressive."

Shortly following respondent's arrival in Bellingham in April, 1926, and continuously thereafter, he received treatment from various physicians of that city. For fourteen months, during 1926 and 1927, the respondent was employed as an insurance solicitor by the Pacific Mutual Life Insurance Company, and earned in that period $761.91 in commissions and renewals.

Appellant contends that its motion at the conclusion of respondent's case in chief to dismiss the action should have been granted, as the respondent never suffered from a total and permanent disability, as defined by the policy; that the policy never became a valid contract of insurance on account of false representations made by the respondent in his written application for the policy concerning his condition of health and his freedom from disease, and concerning his habits as to the use of alcoholic drinks and drugs, and treatments previously had and received by him for such habits, and other false representations; that any and all disabilities sustained by the respondent from the date of the policy were and are the direct results and consequences of his vicious habits in the use of alcoholic liquors and narcotic drugs; and that his false representations constituted a fraud practiced by him upon the appellant and preclude recovery under Rem. Comp. Stat., § 7238, reading as follows:

"The falsity of any statement in the application for any policy covered by this section shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

Respondent insists that the appellant may not invoke the defense of fraud, as the policy provided that it was "incontestable after one year."

■ The general rule is that a policy containing a clause declaring that the contract shall be incontestable after a specified time cannot be contested after that period on any ground not excepted therein. Cooley's Briefs on Insurance, vol. 5, p. 4501 (2d ed.).

"The modern rule is that a life insurance policy containing a provision that it shall be incontestable after a specified time cannot be contested by the insurer on any ground not excepted in that provision. It is said that the practical and intended effect of such a stipulation is to create a short statute of limitations. By the stipulation, the insurance company agreed that it would take a year to investigate and determine whether it would contest the policy of insurance, and that, if it failed within that time to discover any grounds for contesting the same, it would make no further investigation and would not thereafter contest the validity of the policies." *Missouri State Life Insurance Co. v. Cranford,* 161 Ark. 602, 257 S. W. 66, 31 A. L. R. 93.

In *Sanders v. Jefferson Standard Life Ins. Co.,* 4 Fed. (2d) 555, an action was brought on a combination life and accident policy. One of the terms of that contract was to the effect that the provisions for double indemnity did not apply to death from injuries inflicted by another. Another provision of the contract was that the policy was incontestable after the first year, except for nonpayment of premium. The court held that the insurer was not prohibited from denying

double liability, the insured having been shot by another.

The incontestable clause of the policy in the case at bar is not applicable to total and permanent disability benefits. The contract so provides. The parties stipulated in their contract that it

" . . . shall be incontestable after one year from date of issue if the premiums are duly paid, except as provided under the provisions or conditions relating to benefits in the event of total and permanent disability."

The cause was tried by the parties upon the theory that the one year incontestable clause did not apply to total and permanent disability benefits. The court so instructed the jury as follows, and respondent did not except to that instruction:

"You are instructed that while the policy of insurance generally provides that same shall be incontestable after one year from date of issue, if the premiums are duly paid, this provision does not apply to benefits in the event of total and permanent disability; but total and permanent disability, if same shall occur, must occur and originate after the issuance of the policy of insurance by defendant to plaintiff and after the payment of one full year's premium thereon, and unless you so find from a preponderance of the evidence your verdict must be for the defendant."

The appellant reserved, by the exception, the right to question, when a claim for disability was filed, whether the disability occurred and originated after one full year's premium had been paid. When the disability originated, not when it culminated, is the determinative factor.

*Wamboldt v. Reserve Loaf Life Ins. Co.*, 191 N. C. 32, 131 S. E. 395, 45 A. L. R. 1360, cited by respondent, is not in point. In that case, the policy contained a clause of incontestability like the one in the case at

bar. We note, however, the absence from that insurance contract of the exception reserved in the contract before us.

■■ Respondent stated in his application for insurance that he was then free from disease, and that he had never been afflicted with any disease; that he had never taken any treatment for any drug or liquor habit; that he had no hernia; and that he had no insurance on his life.

On cross-examination, the respondent admitted that he had had typhoid fever many years prior to the date of the application; that he had hernia when a boy in his teens, which was afterwards reduced. He testified that his failure to state that he carried insurance in the Union Central Life Insurance Company was an oversight. When examined for insurance by appellant's physician, he gave to that physician for examination X-ray photographs taken of respondent's lungs in 1920.

It must be borne in mind that when he made application to the Union Central Life Insurance Company for disability benefits, the respondent was in an hospital for the insane, there confined as an incompetent. In that application, he stated he had been disabled from June 14, 1924; that he had tuberculosis, asthma, hernia and caries of the spine. That statement is contrary, in part at least, to the information contained in the application made to appellant by respondent's guardian on March 18, 1925. The guardian's application, supported by the attending physician's report, is to the effect that the respondent was suffering from tuberculosis and that he was addicted to the use of drugs; that the respondent had not worked since November 1924; that his case seemed to be hopeless; and that the attending physician knew of

no reason why the claim for total and permanent disability was not a fair one.

If the claimed misrepresentations of respondent in his application made as to matters (did not use drugs or intoxicants and was in good health) that actually contributed to his disability, and if the representations were made with the intent to deceive (which must be found as a fact before respondent's right of recovery can be defeated, *Houston v. New York Life Ins. Co.,* 159 Wash. 162, 292 Pac. 445), was not the appellant apprised of these facts by the application of respondent's guardian in March, 1925? That application was received by appellant at its home office in April, 1925. It was then placed upon notice that the respondent's disability commenced in November, 1924; that respondent was confined in the Eastern Hospital for the Insane in February, 1925, and that his case appeared to be hopeless. The appellant then knew that the disability was tuberculosis, and that the respondent was addicted to the use of drugs. While it may be that, in a proper case, misstatements of an applicant as to the use of narcotics, and as to his freedom from disease, will defeat recovery, this is not such a case. When the appellant was advised in April of respondent's disability, that disability had continued nearly four months. The guardian was entitled to the courtesy of an answer. The policy provides that,

"Total disability, as defined above, which exists and has existed continuously for not less than three months shall be presumed to be permanent."

Thereafter, the appellant received premiums on the policy for three more years. The respondent's right of recovery, if he is in fact totally and permanently disabled, is not barred by his continuing to pay the annual premiums, endeavoring to work, and not insisting on payment by the appellant of disability ben-

efits. If the disability occurred or originated prior to the payment of one full year's premiums, and if the respondent were a "dope fiend" as appellant contends, that defense should have been interposed in April, 1925. No explanation is made by appellant of its failure to investigate the claim and report thereon. It will be presumed that it investigated and waived its right to insist upon a forfeiture, and that the misstatement of respondent that he had no other insurance would not have caused the appellant to reject his (respondent's) application for insurance.

"It is also a settled rule of law that where an insurer has knowledge of facts entitling it to treat a policy as no longer in force and thereafter it receives a premium on the policy, it is estopped to take advantage of the forfeiture. It cannot treat the policy as void for the purpose of defense to an action to recover for a loss thereafter occurring, and at the same time treat it as valid for the purpose of earning and collecting further premiums." 14 R. C. L. 1190.

" 'Clearly the defendant could not assert a right to the premium for valid insurance, and at the same time insist that the insurance had never been effected. By claiming and maintaining such a right, with full knowledge of all material circumstances, it unequivocally affirmed the validity of the insurance for the period covered by the premium, and definitely waived every objection on which its validity could be denied.' *New Jersey Rubber Co. v. Commercial Union Assurance Co.,* 64 N. J. L. 580, 586." *Statts v. Pioneer Ins. Co.,* 55 Wash. 51, 104 Pac. 185.

The evidence amply sustains the verdict. As heretofore recited, the illness of respondent progressed to the point that he was confined in the Eastern Hospital for the Insane in February, 1925. He was finally discharged from that institution in April, 1926, when he removed to Bellingham. From that time, he has been continuously under the care of phy-

sicians. One surgeon performed several operations on the respondent and administered tuberculin treatment. The expert testimony is clear that the respondent is permanently and totally disabled. From January 1, 1925, to the date of the trial the respondent's earnings have not exceeded one thousand dollars. His endeavors to work when disabled, and his receiving less than three hundred dollars per annum as commissions on insurance sold since January 1st, 1925, cannot be interpreted as being engaged in a remunerative occupation and thus bar his right of recovery under his contract with appellant.

"Insured's attempt to perform some of the duties of his employment, where in fact he ought not to have made such attempt, did not estop him from showing that he was totally disabled during such period.

"That insured received wages from his employer during the period of time for which he claimed total disability did not of itself preclude his right to recover as for such total disability." (Syl.) *United States Casualty Co. v. Perryman*, 203 Ala. 212, 82 South. 462.

The jury were correctly instructed, and no error was committed in refusing to give the instructions requested by appellant.

The judgment is affirmed.

MITCHELL, BEALS, FULLERTON, and MAIN, JJ., concur.