No. 23745.

AMERICAN NATIONAL INSURANCE COMPANY, A CORPORATION
*v.* THOMAS T. COOPER.
(458 P.2d 257)

Decided July 28, 1969.     Rehearing denied September 22, 1969.

STRANG, CAMPBELL, CASHEN and CHENEY, for plaintiff in error.

No appearance for defendant in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

THOMAS T. COOPER (insured), defendant in error, obtained a judgment against American National Insurance Company (the company), plaintiff in error, in the amount of $1,187.95, representing certain benefits due him under the terms of a health and accident policy issued by the company. The matter was tried to the court without a jury.

The company is challenging the correctness of the judgment on two grounds: (1) the sufficiency of the evidence to support the court's findings of fact, and (2) the application of the law to the facts.

Actually there is no disagreement as to the facts which are basic to a proper disposition of the case. A review of the record discloses ample competent evidence to support the findings of fact made by the trial court. The crux of the dispute is the effect of the receipt and retention by the company of delinquent premiums paid on behalf of the insured on the day following the accident which gave rise to the claim on which the judgment is based.

The strict application of the terms of the policy would preclude recovery unless the conduct of the company, which we now proceed to examine, constitutes a waiver or an estoppel.

Cooper, on April 13, 1966, signed an application and paid the initial premium for the health and accident insurance policy. The company issued the policy, dated May 13, 1966, for a term of one month, renewable from month to month, upon the payment of a stipulated renewal premium. By its terms the policy provided a thirty-one day grace period for the payment of each renewal premium, during which period "the policy shall continue in force."

Contemporaneously with the execution of his application, Cooper, to facilitate payment, authorized the First National Bank of Montrose to honor drafts drawn by the company against his account for the payment of the renewal premiums. On April 4, 1967, for reasons wholly unrelated to the payment of insurance premiums, Cooper closed the bank account. Consequently, when the draft for the premium due April 13, 1967, was presented for payment on May 2, 1967, the bank returned it to the company with the notation that the account had been closed.

Thereafter the company sent Cooper this letter:

June 9, 1967

Thomas T. Cooper
100 Colorado Avenue
Montrose, Colorado

> Policy: 1399476-H
> Reason Check Returned: acct closed
> Premium Now Due: 4/13
> Grace Period Expires:
> Bank: First National Bank

Dear Policyholder:

The pre-authorized check for the currently due premium on this policy was returned unpaid by your bank. You, of course, know the advantage of keeping your valuable

insurance protection in force. We feel you will want to make arrangements to pay the currently due and future premiums immediately.

Please send us your check or money order for the premium now due no later than the date the grace period expires (shown above) so your policy will continue in force. At the same time return the completed Bank Plan Authorization card. This will provide an up-to-date designation of your account and the bank you are using. A postage paid envelope is enclosed.

If you have changed banks, please visit an official at your new bank to make sure the pre-authorized premium payment method is offered as a convenience to its customers. If you have any questions or would like help changing banks, please write direct to this office or contact your agent. We are here to serve you.

> Sincerely,
> S. W. BAKER, Manager
> Accounting Department

The letter (Exhibit D) reached the Cooper residence on June 13, 1967, after the insured had left home in connection with his business. Later that same day, Cooper was injured by a dynamite explosion which occurred in the course of his work. The insured's wife, upon learning of the accident, requested her father to go to the local agent of the company and pay the delinquent premiums. The father undertook the task on the day following the accident. Armed with the letter from the company, he urged the local agent to accept a check representing premiums for a three-month period, covering the two months which were then due, plus one month in advance. With full knowledge of the accident and the resultant injuries to Cooper, the local agent accepted the check and tendered it to the company. The agent did not require an application for reinstatement, nor did he issue a conditional receipt. The check was deposited to the company's bank account on or about June 20, 1967. Cooper testified, without contradiction, that he was not

advised by the company until sometime in August 1967 that the policy had been canceled as of a date prior to the accident.

On November 6, 1967, Cooper filed his complaint herein and on November 15, 1967, the company filed its answer. The trial was held March 14, 1968. At no time did the company offer to return to the insured any portion of the premiums covering the period from April 13, 1967, to the time of the accident on June 13, 1967.

The foregoing fairly reflects the record and substantially states the facts as found by the trial court.

The company, for its defense, relied primarily upon a policy provision which reads:

"REINSTATEMENT: If any renewal premium is not paid within the time granted the Insured for payment, a subsequent acceptance of premium by American National or by any agent duly authorized by American National to accept such premium, without requiring in connection therewith an application for reinstatement, shall reinstate this policy; provided, however, that. if American National or such agent requires an application for reinstatement and issues a conditional receipt for the premium tendered, this policy will be reinstated upon approval of such application by American National or, lacking such approval, upon the 45th day following the date of such conditional receipt unless American National has previously notified the Insured in writing of its disapproval of such application. The reinstated policy shall cover only loss resulting from such accidental bodily injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin after such date. In all other respects the Insured and American National shall have the same rights thereunder as they had under the policy immediately before the due date of the defaulted premium, subject to any provisions endorsed hereon or attached hereto in connection with the reinstatement."

Before discussing the facts and the legal conclusions

to be drawn from them it seems propitious to review the law of waiver and estoppel in insurance cases.

██ ██ Although there are generally recognizable distinctions between waiver and estoppel, "It may be proper to suggest * * * that estoppel in pais, like waiver, is recognized at law as well as in equity; also that waiver and estoppel in pais are often employed in insurance law as synonymous terms and used indiscriminately." *German American Insurance Company v. Hyman*, 42 Colo. 156, 94 P. 27.

Waiver was employed by this court in *Pomeroy v. Rocky Mountain Insurance & Savings Institution*, 9 Colo. 295, 12 P. 153, decided in 1886, to permit recovery after forfeiture where the insurance company, with full knowledge of the noninsurability of the insured, reinstated the policy and accepted the past due premiums and continued to accept the premiums until the insured's death, a few months after reinstatement.

Recognition of estoppel by conduct and waiver are both found in *Western Casualty Company v. Aarons*, 85 Colo. 591, 277 P. 811, where it was established that the insurer accepted payment of premiums when it knew that insured had passed the age limit stipulated in the policy, and the insured, being entitled to receive the benefits of the insurance, was not permitted to recover premiums paid during the overage period. See, also, *Lagrow v. Woodmen of the World*, 75 Colo. 466, 226 P. 1086; *Reliance Life Insurance Company v. Wolverton*, 88 Colo. 353, 296 P. 793; *James v. Colonial Mutual Life Association*, 7 Cal. App.2d 748, 47 P.2d 362; *U. S. Indemnity Society v. Griggs*, 118 Ill. App. 577.

A Colorado decision which states the rule recognized in many jurisdictions under facts similar to those before us is *International Service Union Company v. Mascarenas*, 99 Colo. 285, 61 P.2d 1025. In *Mascarenas*, the court stated:

"The authorities hold that where with knowledge of the death of the insured the company retains a premium pay-

ment without which liability would not attach, it is estopped to deny liability. *Schuster v. Knights and Ladies of Security,* 60 Wash. 42, 110 Pac. 680; *Knights and Ladies of Security v. Bell,* 93 Okla. 272, 220 Pac. 594; *Peterson v. Modern Woodmen of America,* 127 Wash. 412, 220 Pac. 809. It has been held that the rule applies when concededly the insured was dead when the premium was paid. *Modern Woodmen of America v. Jameson,* 48 Kan. 718, 30 Pac. 460. The company may circumvent such result by promptly returning the premium on coming into knowledge that death preceded payment. *Brown v. Knights of Protected Ark,* 43 Colo. 289, 96 Pac. 450; *Miller v. Union Cent. Life Co.,* 110 Ill. 102 * * *."

To the same effect: *Washington National Insurance Company v. Scott,* 231 Ala. 131, 164 So. 303; *Smith v. Liberty Life Insurance Company,* 118 Neb. 557, 225 N.W. 688; *Fort Worth Mutual Benevolent Association v. Akin,* 9 S.W.2d 398 (Tex. Civ. App.); *Millis v. Continental Life Insurance Company,* 162 Wash. 555, 298 P. 739.

From a review of the facts it appears that under the terms of the policy the insured was in default in the payment of premiums as of May 14, 1967. It also is quite evident from an examination of the June 9 letter that the company did not consider the policy to have lapsed, but regarded it as being "in force." In this communication it pointed out to the insured "the advantage of keeping your valuable insurance protection in force." It requested the insured to pay "the premium now due no later than the date the grace period expires (shown above) *so your policy will continue in force.*" (Emphasis added.) The company quite obviously was conscious of the fact that the grace period had expired at the time it wrote the letter because it left the space blank following "Grace Period Expires:" in the subject reference "(shown above)." Also, "keeping * * * in force" and "so * * * will continue in force" negate any idea of a *lapse* in continuity of coverage.

It is quite clear from the letter that the company had

no intention of forgiving the premiums earned and reinstating the policy as of the date of its receipt of the demanded payment. At the time the letter was written it clearly regarded the insured as being and having continuously been covered by its policy. It just as clearly implied that the insured had a reasonable time in which to "send us your check or money order for the premium now due."

Although the premium due May 13, 1967, was also due at the time the June 9 letter was written the company made no mention of it, which suggests that the company, prior to the accident, was not overly concerned with promptness of payment by the insured.

■ Under the terms of the policy, the company, under the circumstances, could have required an application for reinstatement and issued a conditional receipt for the tendered premium. Had the company followed this procedure, its contention, that since the accident occurred prior to the payment of the premiums the insured was not covered before reinstatement, would have had considerably more appeal. However, where, under the facts just discussed, it receives and retains premiums for the period of the accident with full knowledge of the accident and the injuries to the insured, it waives whatever rights it had under the reinstatement provisions of its policy.

The judgment of the trial court is affirmed.

··MR. JUSTICE DAY and MR. JUSTICE GROVES dissent.

MR. JUSTICE HODGES does not participate.

MR. JUSTICE GROVES dissenting:

I- dissent, but mildly.

The collection of cases in the annotation commencing at '7 A.L.R. 3d 414 leads me to believe that there is ample authority to support a holding either way in this matter. When the insured permitted the policy to lapse and then

attempted to obtain coverage for an accident by making payment of premium following the accident, I would enforce the provision of the policy reading that it covers "only loss resulting from such accidental bodily injury as may be sustained after the date of reinstatement."

MR. JUSTICE DAY joins in this dissent.