Dale E. JARNAGIN, Plaintiff–Appellant,

v.

**BANKER'S LIFE AND CASUALTY COMPANY, Defendant–Appellee.**

**No. 90CA142.**

Colorado Court of Appeals,
Div. II.

May 9, 1991.

Rehearing Denied July 25, 1991.
Certiorari Denied Jan. 27, 1992.

Kevin S. Hannon, Denver, for plaintiff-appellant.

Weller, Friedrich, Ward & Andrew, J. Mark Smith, David G. Mayhan, Denver, for defendant-appellee.

Opinion by Judge SMITH.

Plaintiff, Dale Jarnagin, appeals the summary judgment entered in favor of defendant, Banker's Life and Casualty Company, on all of his contract and tort claims. We affirm.

The following facts are not in dispute. In February 1978, plaintiff purchased two separate policies of sickness and accident insurance with defendant. One policy was for hospital-surgical and intensive care coverage (Policy 412), the other was a long-term hospital indemnity policy (Policy 077) that was "renewable" by its terms to age 65.

In the spring of 1982, plaintiff voluntarily stopped making premium payments. Both policies subsequently lapsed on March 24, 1982. No claims were made against either policy prior to their lapse.

On June 15, 1982, plaintiff sought to reinstate his insurance coverage. Accordingly, he completed and signed an application to reinstate each of the lapsed policies. Plaintiff acknowledged in his applications that he understood reinstatement would be according to the following relevant conditions: (1) the insurance was to be reinstated effective the day defendant approved the request; and (2) defendant would pay benefits for covered loss due to sickness if it began after reinstatement. Additionally, plaintiff reported that, to the best of his knowledge and belief, he was in good health. Finally, the application for Policy 412 included plaintiff's agreement that defendant use a sum equal to one monthly premium to "revive" the policy.

On June 23, defendant reinstated Policy 077, applying the premiums tendered in connection with plaintiff's reinstatements to cover premiums not paid during the entire period of the lapse. By letter, plaintiff was notified of the reinstated policy's June 23, 1982, effective date and, again, of defendant's intent only to pay covered loss which began after such date. The letter also noted that Policy 077 had "lapsed" March 24, and that the policy was "paid to" June 24, 1982. Policy 412 was reinstated July 9, 1982, with defendant applying one monthly premium to the lapse period. Again, by letter, plaintiff was notified of the reinstated policy's effective date and of defendant's intent to pay only loss which began after such date. Defendant also apprised plaintiff that Policy 412, like Policy 077, had "lapsed" March 24.

Before these events, on June 19, 1982, plaintiff was hospitalized for abdominal pain. A work-up was initiated and, on June 23, 1982, a radiologist reported that x-rays disclosed "findings compatible with Crohn's disease."

Over the latter half of 1982 and early 1983, plaintiff was hospitalized six times for the treatment of Crohn's disease. In late 1982, defendant began receiving claims on these hospitalizations and issued a number of payments. However, in March 1983, defendant notified plaintiff that these payments had been made in error and that no further benefits would be paid for the 1982 and 1983 hospitalizations because plaintiff's Crohn's disease, the "condition" which prompted the hospitalizations, had begun during the period of lapse and prior to reinstatement of either Policy 077 or Policy 412.

Based on this denial of payment, plaintiff filed the present complaint alleging defendant had breached the parties' contract by its bad faith denial of plaintiff's benefit claims. Plaintiff also raised a number of additional tort claims.

Defendant moved for summary judgment, arguing that no genuine issue of fact existed with regard to defendant's liability under any of plaintiff's claims for relief. The trial court agreed and granted defendant summary judgment on all claims.

## I.

Plaintiff contends that the trial court erred in granting defendant summary judgment on his claims of breach and bad faith breach of contract. We disagree.

Summary judgment is only warranted on a clear showing that there is no genuine issue as to any material fact. The burden of establishing the lack of a triable issue is on the moving party. However, once such a showing has been made, the burden is on the opposing party to demonstrate by relevant and specific facts that a real controversy exists. *Ginter v. Palmer & Co.*, 196 Colo. 203, 585 P.2d 583 (1978).

## A.

First, plaintiff argues that, as a matter of law, defendant waived its right or, alternatively, is estopped from asserting its right to deny payment, based on its failure to notify him clearly and unambiguously of its intent to limit coverage to loss which began *after* reinstatement.

■ An insurer who fails to notify the insured of limitations regarding coverage may be precluded from relying on the existence of such limitations to avoid liability. *See generally Leland v. Travelers Indemnity Co.*, 712 P.2d 1060 (Colo.App.1985).

■ Here, however, it is undisputed that the reinstatement provision in plaintiff's original policies expressly provided that "the reinstatement policy shall cover only ... loss due to sickness as may begin after [the reinstatement] date." Furthermore, it is undisputed that plaintiff assented to this

specific limitation on coverage in his applications for reinstatement and that he was further apprised of this limitation in defendant's letters confirming reinstatement of the policies.

Nonetheless, plaintiff argues that defendant's conduct with regard to the premiums received with his reinstatement application created the contrary expectation of continuous coverage. In particular, plaintiff cites defendant's election to apply these premiums retroactively to months during the lapse.

However, plaintiff's argument entirely ignores the fact that reinstatement of sickness and accident policies is governed by statute, specifically § 10–8–104, C.R.S. (1987 Repl.Vol. 4A), and that provision is dispositive of plaintiff's argument.

Section 10–8–104 enumerates the provisions which are required of each sickness or accident policy delivered or issued for delivery to any person in this state. Section 10–8–104(5), C.R.S. (1987 Repl.Vol. 4A) addresses reinstatement; it provides, in exactly the same language found in plaintiff's policies, that reinstatement coverage shall be limited to loss due to sickness as may begin after reinstatement.

Moreover, it also states in relevant part:

"Any premium accepted in connection with the reinstatement *shall* be applied to a period for which premium has not been previously paid, but not to any period more than sixty days prior to reinstatement."

. . . .

"[This] ... sentence ... may be omitted from any policy which the insured has the right to continue in force subject to its terms by the timely payment of premiums until at least age fifty or, in the case of a policy issued after age forty-four, for at least five years from its date of issue." (emphasis added)

Here, if we view the facts at issue in accordance with the governing provisions of § 10–8–104, it is apparent that defendant's retroactive application of the premi-

ums with regard to both policies was in specific compliance with the statute.

Policy 077 was, by its terms, renewable to age sixty-five, thereby authorizing defendant, without written notice to plaintiff, to apply premiums received with reinstatement beyond the sixty-day limitation. Accordingly, defendant's application of the reinstatement premiums to cover the entire period of the lapse was proper.

Defendant could not and, indeed, did not attempt such an extensive retroactive application of premiums with Policy 412. Rather, with plaintiff's acknowledgement and consent, acquired in his application to reinstate Policy 412, defendant applied only one monthly premium retroactively as a fee to "revive" the policy.

In light of the foregoing, we conclude that defendant established a prima facie case demonstrating that plaintiff received clear and unambiguous notice of its intent to limit coverage. Moreover, we conclude that plaintiff failed to present evidence on waiver or estoppel sufficient to establish that a real controversy as to the propriety of defendant's denial of coverage existed. *See generally American National Insurance Co. v. Cooper*, 169 Colo. 420, 458 P.2d 257 (1969). Hence, no factual issue existed in regard to notification that would bar entry of summary judgment for defendant.

### B.

Alternatively, plaintiff argues that because his disease "commenced" while his policies were in force, defendant had no basis, as a matter of law, to deny coverage. We disagree with the premise of this argument.

First, plaintiff contends that because the policies defined "commencing" in the alternative, he was entitled to assert and defendant was required to accept the date of diagnosis as the date his Crohn's disease "commenced," despite the admitted fact that symptoms relating to the disease were manifest and active prior to this date.

Plaintiff relies on the following policy definition to frame his argument:

" 'Commencing' means when the sickness first becomes manifest or active, or when there is a distinct symptom or condition from which one learned in medicine can diagnose the sickness with reasonable certainty."

We agree with plaintiff that the definition he asserts is, indeed, the proper definition under which to analyze his contention of error. A review of the insurance policies and the reinstatement communications discloses that the term "begin" as used in the reinstatement provision has not been elsewhere defined.

Thus, the question presented is whether diagnosis or the manifestation of active symptoms constitutes "commencement" of the disease under this definition. It is readily apparent, through the definition's use of the disjunctive, that the definition is intended to operate in the alternative. However, in order to avoid disputes, such as that presented here, that may arise from a party selecting the most favorable alternative to their respective positions, we believe that a method of determining the priority of these alternative occurrences is essential.

For the following reasons, we determine that the intention of the parties, as well as the policies of the state, are best served if the "commencing" definition is read as if it contained the additional clause "whichever first occurs." We, therefore, so construe it.

■ First, we note that the definition at issue is derived from the *coverage* provisions of the plaintiff's policies. Such coverage provisions are to be liberally construed in favor of the insured and, thus, in favor of the broadest possible coverage, that is, coverage at the earliest possible date. *See generally Worsham Construction Co. v. Reliance Insurance Co.*, 687 P.2d 988 (Colo.App.1984).

■ However, we conclude that plaintiff's interpretation is, simply, illogical and inoperable. A sickness or disease, while commonly presenting by either symptom or diagnosis, nonetheless, begins only *once*. Plaintiff's interpretation, however, allows

both the insurer and the insured, in their discretion, to assert either date as determinative of commencement. Clearly, such "flexibility" in establishing the date sickness commences invites confusion and unpredictability, if not manipulation and abuse by either party.

Thus, we hold that a sickness "commences" when either it becomes manifest or active or when one learned in medicine can diagnose the sickness with reasonable certainty, whichever occurs first.

In the present circumstances, we recognize that our interpretation of the definition of commencement does not work to the plaintiff's benefit. However, it is a well accepted principle of contract law that policy provisions should be interpreted to apply uniformly. Thus, we decline to adopt a different interpretation of the definition of commencement based solely on the reinstatement status of this particular plaintiff's policies.

■ Inasmuch as it is undisputed that plaintiff experienced abdominal symptoms severe enough to prompt hospitalization on June 19, 1982, we hold that plaintiff's disease "commenced" at the latest, on such date. Moreover, as such date was eight days prior to the reinstatement of Policy 077 and over twenty days prior to the reinstatement of Policy 412, we further hold that, as a matter of law, plaintiff's disease did not "commence" while his policies were in force. Thus, we conclude that plaintiff has failed to demonstrate that a real controversy as to defendant's denial of coverage existed.

Plaintiff, however, relying again on the policies' alternate definition of "commencing," optionally asserts that his disease commenced in 1981 when he first experienced symptoms compatible with Crohn's disease.

It is undisputed that plaintiff reported to his doctor, at the time of his hospitalization in June of 1982, that, in 1981, he had experienced symptoms similar to that which prompted the June 1982 work-up. However, we find no evidence in the record to establish that, at any time prior to the policies' lapse in 1982, plaintiff sought medical advice or treatment, submitted any claims, or gave any notice to the insurer relative to thôse abdominal symptoms.

Thus, we conclude that, under the original policies, defendant was unaware of plaintiff's "condition" and thus such policies cannot trigger coverage. Moreover, we conclude that plaintiff's attempt to link the 1981 symptoms with the 1982 losses violates the express terms of the reinstatement provisions authorizing only coverage for loss due to sickness which begins *after* reinstatement.

In light of the foregoing, we conclude that plaintiff's argument is without merit and, thus, fails to present an issue that would bar entry of summary judgment.

In sum, we hold that plaintiff failed to establish that a real controversy existed as to the propriety of defendant's denial of coverage. Accordingly, the trial court properly entered summary judgment in favor of defendant on plaintiff's contract claims of breach.

## II.

Next, plaintiff asserts that the trial court erred in granting summary judgment in favor of defendant on his ancillary tort claims for bad faith, negligent misrepresentation, outrageous conduct, etc. We disagree.

We have reviewed the arguments presented by plaintiff with regard to these tort claims and conclude that all such claims emanate from defendant's conduct with regard to its denial of coverage.

Based on our determination that defendant had the right to deny payment of benefits, we conclude, as did the trial court, that these claims are, as a matter of law, either moot or without merit.

The judgment is affirmed.

JONES and RULAND, JJ., concur.