MARTHA L. HAWKINS, Administratrix of The
Estate of EARL HAWKINS, Deceased,

*Plaintiff and Appellant,*

vs.

L. C. JONES TRUCKING COMPANY, INC., a cor-
poration,

*Defendant,*

and

CARL BECHTOLD,

*Defendant and Respondent.*

(No. 2503; June 26, 1951; 232 Pac. (2d) 1014).

276

For the plaintiff and appellant the cause was submitted upon the brief and also oral argument of William J. Wehrli, Casper, Wyoming.

For the defendant and respondent the cause was submitted upon the brief and also oral argument of Edward E. Murane of Casper, Wyoming.

278

## OPINION

RINER, Justice.

The action which the record in this direct appeal brings here for review is one commenced by Martha L. Hawkins as Administratrix of the estate of Earl Hawkins deceased, in the District Court of Natrona County, to recover damages from the two co-defendants Carl Bechtold and the L. C. Jones Trucking Company, Inc., for causing the alleged wrongful death of Earl Hawkins

as a consequence of a collision of two motor vehicles on highway No. 20 at a place located about 50 miles west of the City of Casper, Natrona County, Wyoming, on March 8, 1949.

The decedent was riding in a jeep automobile owned and driven by the respondent, Carl Bechtold. For convenience we will refer to the Bechtold car as the "jeep". The other motor vehicle involved in this collision was a truck weighing about 13 tons driven by Neil Long, an employee of the L. C. Jones Trucking Company, Inc., and owned by that Company. Hereinafter it will usually be mentioned as the "truck". The cause was tried in said court before Hon. H. R. Christmas, Judge of the 3rd Judicial District, with a jury in attendance.

At the close of plaintiff's evidence Bechtold moved for a directed verdict in his favor, the ruling thereon being reserved by the presiding judge; whereupon evidence was submitted for the plaintiff by calling the driver of the truck and the driver of the jeep, Mr. Bechtold, and examining them as upon cross examination under the statute. Thereafter evidence was submitted for the defense by the two co-defendants and upon its conclusion the defendant L. C. Jones Trucking Company, Inc., through its counsel, moved for a directed verdict in its favor which was by the court denied and exception to the ruling was allowed to the movant. Thereafter the defendant Bechtold renewed his motion for a directed verdict and this was granted by the court. To this last ruling plaintiff saved her exceptions and in due course perfected her appeal to this court.

The co-defendant, the trucking company, did not perfect any appeal but as the record before us discloses settled the case as to its alleged liability to plaintiff on July 14, 1950, after the court had directed a verdict for Bechtold, and no judgment was given plaintiff against

it. This settlement was approved by an order of the regular presiding judge of the 7th Judicial District, the Hon. C. D. Murane. The co-defendant, L. C. Jones Trucking Company, Inc., had previously on the 5th day of January 1950, moved for and obtained an order from the District Court dismissing its cross-petition filed December 14, 1949, against Bechtold, without prejudice. That cross-petition, to present it in rather complete detail, charged as negligence on the part of Bechtold as follows:

"That immediately prior to said collision and while the truck owned by said L. C. Jones Trucking Company, Inc., was being operated on its own and proper side of the road, the said Carl Bechtold turned his vehicle toward the left and over the center and into the line of traffic occupied by the truck then being operated by said L. C. Jones Trucking Company, Inc., and the said Carl Bechtold failed to drive and keep his said vehicle on his own or said right-hand side of said highway. That at said time and place, the said Co-Defendant, Carl Bechtold was driving at a high and dangerous rate of speed so that his vehicle was out of control and that as a result of his negligence aforesaid, the above-mentioned collision occurred and this Cross-Petitioning Defendant suffered the damages stated above."

The same day the cross-petition was filed the trucking company filed its separate answer to plaintiff's petition, for the most part consisting of a general denial of negligence on its part as asserted by plaintiff's pleading and averring that the negligence of Bechtold in driving the jeep "over the center line of the highway and into the path of the truck being operated by this Answering Defendant, causing the same to collide and that such collision was the proximate result only of the negligence of the said Carl Bechtold."

The plaintiff's petition herein after charging in that pleading that the L. C. Jones Trucking Company, Inc., "negligently operated this truck with the left wheels

thereof across the center and upon the left side of the highway and negligently failed to turn promptly to the right of the center of the traveled road and to remain on the right of the center thereof until the approaching jeep in which decedent was riding had passed"; then alleged:

"That defendant Carl Bechtold, when approaching the truck operated by defendant L. C. Jones Trucking Company, Inc., at the time and place above mentioned, was traveling on his own right hand side of the road, but as he approached the truck operated by defendant L. C. Jones Trucking Company, Inc., and when within a short distance thereof, he turned his vehicle abruptly to the left and into the path of the approaching truck, and at the time of the collision the left wheels of the said jeep, operated by defendant Carl Bechtold, were across the center of the highway and upon the left side of the highway."

The following paragraph 5 of plaintiff's pleading also charged:

"That defendant Carl Bechtold was grossly negligent in the operation of the jeep which he was driving at the time and place above described, in that when he approached the truck of L. C. Jones Trucking Company, Inc., he failed to remain on his own right hand side of the road until the approaching truck has passed, but negligently and without cause or reason turned his vehicle abruptly to the left and into the path of the approaching truck."

The defendant, Bechtold's, separate answer denied the charge of negligence against him but admitted that his co-defendant, the trucking company, was negligent as charged in plaintiff's pleading. As an affirmative defense he alleged that Hawkins was Bechtold's guest at the time of the accident and alleged that at the time of the impact of the two vehicles the L. C. Jones Trucking Company, Inc., truck was on the wrong or left side of the highway directly in the path of Bechtold's vehicle

and that the accident was due solely to the negligence of the L. C. Jones Trucking Company, Inc.

Plaintiff's reply to the separate answer of Carl Bechtold was a denial of all allegations of defendant's answer except it admits that the trucking company was negligent as alleged in plaintiff's pleading. The separate answer of the L. C. Jones Trucking Company, Inc., denied any negligence on its part and asserted that the proximate cause of the accident was the gross negligence of Bechtold in failing to remain on his own right hand side of the road, but instead drove the jeep on the wrong side of the road and into the path of the truck.

It is clear from the pleadings and proofs of the parties that so far as the defendant, Bechtold, is concerned this matter must be viewed in the light of section 60-1201 W.C.S. 1945 commonly known as the "Automobile Guest Statute" and which reads:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought."

It may be here noted also that the cause was tried on that theory by all parties concerned, the question to be resolved being therefore whether under the circumstances proven herein gross negligence in the operation, by Bechtold, of his automobile at the time of the collision was established. In examining the evidence in this record in conjunction with the pleadings of the parties as above outlined and the proofs submitted on the trial of this case we must bear in mind the rule of

this court as to the manner in which cases presenting directed verdicts should be considered. That rule is specifically stated to be, Galicich vs. Oregon Short Line R. Co. et al 54 Wyo. 123, 87 P. (2d) 27:

"This court has heretofore indicated that in determining whether the trial court properly sustained a motion for a directed verdict the evidence of the plaintiff must be accepted as true, with the reasonable inferences to be drawn from it, and that where this fails in law to establish a claim, it is the duty of the court of first instance to so instruct the jury. Rosson vs. Hylton, 45 Wyo. 540, 548, 22 P. (2d) 195, and cases cited therein."

Under this rule considering it in the aspect most favorable to the plaintiff, we review briefly the cross examination of the drivers of the jeep and truck respectively called as witnesses by counsel for the plaintiff under the statute:

CARL BECHTOLD, the driver of the jeep thus testified: On the 8th of March, 1949, when this accident occurred he owned a jeep station wagon, a 1948 Willys jeep with metal body. This car would hold five passengers comfortably. It had soft tires which held about 24 pounds pressure in them for easier riding. It was an almost new vehicle. Bechtold had had it less than six months; he did not give it any unusual amount of use in that six months' time; the tires were passenger tread tires. He and Earl Hawkins left Casper a few minutes after 8 a.m. when it was daylight; he was en route to Powell by way of Cody where a short meeting of the local union was to be held and then they were going to proceed on to Powell to the Elk Basin where Mr. Hawkins was employed. Hawkins intended to return to work there. Mr. Hawkins had come to Casper to visit with his wife over the weekend and was returning to his employment in the Elk Basin field about 18 miles north of Powell. Because of the condition of the road Bechtold drove about 35 to 45 miles an hour; that morn-

ing there was a very wet snow and rain. It began snowing at Casper and got worse as they got to Hell's Half Acre. The accident happened between 9 and 10:00 in the morning. Bechtold does not remember even within 30 minutes when it occurred. The accident happened somewhere between what is known as Hell's Half Acre and Waltman, which is in the neighborhood of 45 to 50 miles west of Casper. He doesn't know the exact mileage. He first observed the truck approaching him when he came over the crest of the hill which was just on the other side of the bridge; that is a very dangerous bridge and a vehicle coming from the other direction could not be seen until the car had topped the hill and Bechtold estimated that that would be a distance of 300 yards from the center of the bridge. He saw the truck as it came over the crest of the hill which is a small hill but when down in the dip the visibility is limited until after the vehicle has gone across the crest of the hill. At that time Bechtold was east of the bridge a little in excess of 300 yards. The road is about straight at that point and runs in an approximately straight east and west direction. When Bechtold first saw the truck he was driving on the right hand side of the highway possibly 35 to 40 miles an hour. He continued at that speed. Thereafter the truck came down off the hill and crossed in the direct center of the bridge. He did not move to the right hand portion of the bridge. Bechtold expected the driver of the truck to return to his proper side of the road. The truck driver didn't return. After he left the bridge it was a minute or a split second later that he could have returned to his own side of the road had he made some effort, to do so but he did not do so and that is all Bechtold could remember, except for the collision when, as he says the lights went out.

The collision occurred between 60 and 100 feet east of the bridge according to Bechtold's assumption; that

is approximate, as the thing happened so fast. The truck was between three and four feet over the center line of the highway. Bechtold said it was astraddle of the center line of the highway. Bechtold's left front wheel hit the truck's left front wheel. Bechtold was unconscious as a result of the wreck and remained unconscious until he arrived at the hospital where he remained for eight days. After he was released he saw the truck in a parking lot. It had not been repaired in any way when he first saw it after the accident. The bridge was narrower than the road east of the bridge. The truck had left the bridge some 60 or 100 feet east of it when the accident occurred. The condition of the highway was such that Bechtold felt that he could safely drive 35 to 40 miles an hour. The storm decreased somewhat after leaving Casper. The road had wet snow and slush upon it. Bechtold does not recall that there was a marked center line on the highway. The truck was in the center of the road, the oil mat. Bechtold thought the road was about 20 feet wide at the place where the collision occurred. He was on his own side of the road. He was not, at any time, across the center of the highway and on the wrong side of the road before this accident happened.

NEIL LONG, the driver of the truck, also called by plaintiff for cross examination, testified that he was employed as a truck driver by the L. C. Jones Trucking Company, Inc., one of the defendants in this suit. He had driven a truck about eight years. On the 8th of March, 1949, he was driving the L. C. Jones Trucking Company's truck which collided with the jeep driven by Mr. Bechtold. The truck was an International with tractor and semi-trailer, used to move heavy oilfield equipment. The truck had a fifth wheel which hooked up to the tractor; the entire equipment being approximately 40 feet long and 8 feet wide. At the time of this

accident the truck was empty. It was used for hauling oil field pipe. The truck unloaded weighed approximately 26,000 pounds. At the time of this accident Long was driving east on the Yellowstone highway, or what is known as U. S. highway No. 20. He was a little bit east of Waltman when the accident occurred. The highway is about straight east and west at that place. There was no curve at the point of the accident. The top of the hill west of the bridge was about 300 yards from the bridge. It is on the main oil surfaced highway. To the east of the hill is a bridge and it was east of this bridge where the collision took place. He had just started down the hill when he saw the jeep approaching. The jeep was coming down the slope meeting the truck from the opposite direction. There is a little slope east of the bridge toward the west down to the bridge. The slope is gradual; a very small grade. Long said that Bechtold was about 500 feet east of the bridge when he first saw him. There had been some snow that morning, but he did not run into it until about 30 miles west approximately of where the accident happened. The snow as it fell was melting pretty much as it hit the ground; the accident occurred about 10:00 in the morning. It was not a heavy snow at that time; it was just wet and slushy. Long was driving the truck approximately 40 miles an hour as he approached the bridge. He had been driving faster than that averaging about 45 miles an hour; there was no-one with him in the truck. On that particular tractor and trailer truck there are the front wheels and back wheels on the tractor and tandem wheels or two wheels together on the trailer; that is two sets of wheels on the trailer, single wheels in front of the tractor and double wheels on the back of the tractor. After Long had come over the crest of the hill and started down towards the bridge and just about half way down the hill he noticed the jeep coming up from the opposite direction and

Long pulled over to the right as far as he could on this bridge. Long was across the bridge before he reached the jeep, at the point of impact. The impact occurred about 60 feet east of the bridge. About 50 feet before the truck and the jeep met it did not seem that the jeep had slowed down much and Bechtold applied the brakes and skidded for a small ways. Then Bechtold seemed to get off the brakes and tried to get his jeep under control and then he applied the brakes again and skidded right into the truck. At that time Long was on the right side of the highway, a good two feet past the center of the highway. The jeep was on the wrong side of the road. The jeep skidded sideways instead of going straight down the road. The left front wheel of the truck struck the left front wheel of the jeep. At the time of the impact the jeep was not going in a straight westerly direction down the highway. His left side was slightly over in the truck's lane more than the front end; that is the rear end of his vehicle was in the truck's lane more than the front end. After the collision took place the truck was out of control and it went on down the road approximately 150 feet and went into the borrow pit, on the right hand side of the road. Long was not hurt or injured except for skinned shins. The truck did not turn over. After the accident the jeep was right straight across the road on his side of the road—off the road. The jeep was clear off the highway. It was not turned over but was sitting on its wheels. Hawkins, the man who was killed, was to the left and rear of the jeep at the edge of the oil mat. He lived approximately 30 minutes after the accident. Long came in with a patrolman, Leech. Long had no difficulty at all with his truck so far as keeping it going forward in a straight direction at that time. There was no condition that would prevent him (Long) or the driver of a vehicle from driving at that time so far as the road was concerned. There was some little snow

and slush on the road. It had not frozen at all. Long did not apply the brakes as he came down the hill but ran his truck against compression to reduce the speed to about 30 or 35 miles an hour; the speed he was going when the collision occurred. The bridge was 19 feet wide; he measured it. East of the bridge the oil surface is wider than the bridge—about 21 feet.

On recall after cross examination Bechtold testified that from the time he saw the truck until the time of the collision he continued at about the same rate of speed and that he did not apply the brakes at any time.

The foregoing was all of the testimony offered by the plaintiff as to how the accident occurred before her case was announced as rested by her counsel.

When the defense introduced its evidence the first witness called for the defense was Carl Bechtold himself whose testimony was on cross examination by counsel for plaintiff, omitting repetitions, in part as follows:

That he did not skid because he had applied the brakes; that it was possible in a split second that he might have swerved, but if he did swerve it was not from the application of the brakes; he does not recollect skidding. Bechtold might have swerved in a split second in the matter of trying to pull his car from one side to the other. Bechtold said that the truck never got back on its own side of the road when the accident happened. Bechtold had been over this highway before a number of times. The wind shield wipers on the jeep were on and off during the trip from Casper to the place of the collision. Bechtold would say that the jeep was two or three feet from the center of the highway at the time of the collision. The last Bechtold remembers he was thinking that the wheels of the truck were coming right over him. The truck was a large heavy tractor and stood up and high off the ground.

Thereafter the driver of the truck Neil Long was called by counsel for the L. C. Jones Trucking Company, Inc., as a witness for the latter and on cross examination by counsel for plaintiff he stated in addition to what has been set forth that:

Prior to the collision Long was driving approximately 35 miles an hour. The jeep was going 40 or 45 miles an hour. When Long came to the bridge he started swerving over to the right. At the point of impact the right front wheel of the truck was off the oil mat. He determined that by the tracks that were left. The truck was not thrown over to the right at the point of impact very much. The jeep approached the bridge faster than Long thought it did. After Long crossed the bridge he swerved as far as possible before the accident occurred. The first vehicle that came along after the accident was a truck going in the same direction in which Long was going. The name of the driver of this truck was Carl Jackson. At the point of the accident the slush on the road was 1½″ deep; mostly wet snow. It did not look to Long at any time as though the jeep was being driven over towards his, Long's side of the road and that it was about 50 feet or more when he first applied his brakes; that Long never did see Bechtold apply his brakes; all he saw was the wheels skid. All the three wheels that Long could see were skidding.

The witness, Jackson, who was called as a witness for the L. C. Jones Trucking Company, Inc., who arrived on the scene of the accident shortly after it occurred testified when cross examined by counsel for the plaintiff that he (Jackson) never measured the width of the road at the bridge; the width of the road east of the bridge is 21 feet, but he never measured it. The tracks showed that after his, Long's, truck got off the bridge it swerved over to the right. When Jackson first went down there he went to the point where the accident oc-

curred and to where the jeep was off the road. Up to that time no other vehicle was there. The first one was the one that was sent for; the ambulance, and he does not recall who that was.

Robert Grieve, another witness, called by the co-defendant L. C. Jones Trucking Company, Inc., testified on cross examination by counsel for the plaintiff that at the point where he believed the accident took place there was a skid of the jeep; the snow and slush was pushed back. There was no skid, so far as the truck was concerned so far as he could see; that he never got out of his pick-up; he was in the pick-up and talked to Jackson and he observed these things from the pick-up. He was there he maintained, not more than five or ten minutes. He did not see Long, the truck driver there, and did not see anyone else other than Jackson to whom he talked. The boys in the jeep passed Grieve about 25 miles east down the road before the accident; they passed him going west. There was no other traffic there at that time.

Thereafter counsel for the L. C. Jones Trucking Company made a motion for a directed verdict in its favor which, as stated above, was denied by the court. Immediately after that the defendant Bechtold renewed his motion for a directed verdict which, as already indicated, was granted. No other testimony or evidence was introduced on the trial, which had commenced on July 13, 1950.

The material part of the judgment appealed from and with which we are now concerned reads thus:

"the trial having proceeded to the 14th day of July, 1950, the Court, on said date, did instruct the jury to return a verdict in favor of the defendant Carl Bechtold and against the plaintiff, and in accordance with the instruction of the Court, the jury, on said 14th day of

July, 1950, did return its verdict in favor of the defendant Carl Bechtold and against the plaintiff.

"NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff take nothing as against the defendant Carl Bechtold and that the action be and the same hereby is dismissed as to said defendant."

In our case of Mitchell vs. Walters 55 Wyo. 317, 100 P. (2d) 102, the definition of gross negligence as announced by the Supreme Judicial Court of Massachusetts was quoted and approved as "doubtless as accurate as can be supplied." So thought the Supreme Court of Vermont in Shaw, Administrator, vs. Moore 104 Vt. 529; 162 A. 373, for it was there said that this definition supplies "a meaning of sufficient distinctness to be applied usefully by Courts and Juries to particular facts before them." It was pointed out also in the Mitchell case supra, that this definition had been invoked in the subsequent case of Beaton vs. Dawson 303 Mass. 429, 21 N.E. (2d) 965, a motor vehicle accident case where injuries to a guest resulted, from the operation thereof by his host.

We find set forth in Malcolm's Automobile Guest Law (1937), section 56 page 198 an explanation of the position of the Massachusetts courts as to automobile guests as a consequence of alleged negligence in this language:

"Besides the 26 states that have adopted specific statutes to limit the liability of the owner or operator of an automobile to his or her gratuitous passenger, there are two states, Massachusetts and Georgia, which, by judicial decisions, arrive at the same result by prohibiting recovery by a guest unless the accident causing injury or damage is due to the gross negligence of the owner or driver of the car."

We may properly note at this point also that in the case of Altman vs. Aronson 231 Mass. 588, 121 N.E.

505, quoted in the Mitchell case supra, Mr. Chief Justice Rugg remarked further in regard to gross negligence that:

"* * * It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. But it is something less than the willful, wanton and reckless conduct which renders a defendant who has injured another liable to the latter even though guilty of contributory negligence, or which renders a defendant in rightful possession of real estate liable to a trespasser whom he has injured. It falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong."

Illustrative of the attitude of the Court of Last Resort in the State of Massachusetts since the Altman case are the following decisions:

In the two cases of Folan vs. Price and Donohue vs. Price 293 Mass. 76, 199 N.E. 320, where there were presented actions by two automobile guests against their host, Price, it appeared that the car in which these guests were riding was proceeding on the right hand side of the road at a speed of 30 to 35 miles per hour, when, without warning, the car skidded and struck a tree at the right of the road; that just before the accident the defendant heard "a grating noise, apparently at his right rear wheel, so turned around to look over his right shoulder to see what the noise was from and he continued looking in that manner for about ten seconds." The plaintiff guests had judgments given in their favor in the lower court; upon appeal on the part

of the defendant the State court of final authority said: "The foregoing was substantially all the evidence bearing on liability. As far as appears the road was wide, straight and level and there was no other traffic upon it. There was no testimony that the speed continued to be thirty- to thirty-five miles an hour up to the moment of the accident nor that the defendant could not, even while turning, form a judgment as to his position on the road. The plaintiffs are bound by their own uncontradicted testimony that the automobile did not drift or turn off the road until 'without any warning' it skidded. The skidding was not in itself evidence of any negligence. Adamian vs. Messerlian (Mass.) 198 N.E. 166. It is almost instinctive for a driver who hears a grating noise at his rear wheel to look back. Such an act cannot in itself be deemed grossly negligent. Although under some circumstances it might be found to indicate lack of due care, it nevertheless denotes some degree of alertness and regard for the safety of the vehicle rather than highly culpable heedlessness. It is not like the withdrawal of the driver's attention for purposes wholly dissociated from the business of driving. All that is left in these cases as a basis for a finding of gross negligence is the contention that the defendant looked back so long that he did not see whatever caused him to skid in time to avoid it. This may be debatable ground. But even if it could be found that this failure to look ahead sooner was the cause of his skidding, we are not quite prepared to hold that under the circumstances here disclosed, even if the judge believed all the defendant's testimony, literally, this difference of a few seconds in time is enough to close the gap and to round out the proof of that 'indifference to present legal duty and * * * utter forgetfulness of legal obligations' which constitute gross negligence." Altman vs. Aronson, 231 Mass. 588, 591, 121 N.E. 505; 4 A.L.R. 1185.

The order of the Appellate Division approving the trial court's action in finding for plaintiffs was reversed and judgment was directed for the defendant.

In Burke vs. Cook 246 Mass. 518, 141 N.E. 585 the facts considered were these: The action was by a guest to recover from his automobile host for injuries sus-

tained in an accident which happened as follows: the motor car crossed a bridge over the Cape Cod canal going very slowly at a place only a short distance from the scene of the accident. The highway where the accident happened was a straight macadam road where there was clear vision for a long distance ahead. The only other traffic was a vehicle presently to be mentioned. There were no people and no intersecting roadways on this highway. After crossing the bridge the speed of the automobile increased until a team or truck was met or passed; a few seconds before the accident and while the car was "going fast" as one witness said and others said it was going 35 miles per hour and just as the other vehicle was passed there was a "thump, thump" noise from the right rear wheel and in a very short time, two or three seconds, the automobile went up in the air; turned over, struck on its top making a mark in the hardened road as of a car sliding on its top for three or four times its length. The record disclosed that "just before the accident the car seemed to be steering to the right * * * the defendant turned his wheel to the left quickly and then the car turned over." The noise mentioned above indicated that there had been some trouble in the right rear wheel or its tire; after the accident one of the rear tires was found to have a long cut in it. In sustaining the defendant's exceptions the Court in part said:

"The defendant by written motion requested the direction of a verdict in his favor for the stated reason that there was no evidence of gross negligence, and excepted to the failure to direct such a verdict. The case was submitted to the jury without any exception to the instructions actually given, and the plaintiff had a verdict.

"Clearly, if this action can be maintained by proof of what is sometimes called ordinary negligence for the purpose of distinguishing it from gross negligence, there was a jury issue. The rate of speed, the quick turning of the automobile and its overturn, together

were sufficient to justify a conclusion founded on the failure to fulfill that duty. But confessedly the plaintiff cannot get on unless the evidence was sufficient to uphold a verdict based on gross negligence. (Massaletti vs. Fitzroy 228 Mass. 487, 118 N.E. 168. * * * The governing principles as to what is necessary to constitute gross negligence have recently been fully considered in Altman vs. Aronson, 231 Mass. 588, 121 N.E. 505, 4 A.L.R. 1185, and do not require restatement. * * *

"* * * In appropriate cases a ruling can be made that the facts are not sufficient to justify a verdict based wholly upon the existence of gross negligence. Bell vs. Siegel 242 Mass. 380, 136 N.E. 109, 25 A.L.R. 1261. See Debbins vs. Old Colony Railroad, 154 Mass. 402, 28 N.E. 274. The skidding of the car was not of itself evidence of negligence. Kelleher vs. Newburyport, 227 Mass. 462, 464, 116 N.E. 806, L.R.A. 1917F, 710; Lambert vs. Eastern Massachusetts Street Railway, 240 Mass. 495, 134 N.E. 340. The description of the speed as 'fast' did not spell gross negligence. Such characterization falls far from showing a rate of operation unusually high or dangerous, or so excessive as to constitute that breach of duty. See Foley vs. Boston & Maine Railroad 193 Mass. 332, 79 N.E. 765, 7 L.R.A. (N.S.) 1076; Olund vs. Worcester Consolidated Street Railway, 206 Mass. 544, 92 N.E. 720; Singer Sewing Machine Co. vs. Springfield Street Railway, 216 Mass. 138, 103 N.E. 283. A speed of 35 miles an hour, while prima facie evidence of a rate higher than is reasonable and proper, if continued for the distance of a quarter of a mile, was not conclusive even of negligence. The criterion is what was 'reasonable and proper, having regard to traffic and the use of the way and the safety of the public.' St. 1910 c. 605, § 6, now G.L.c. 90, § 17.

"In the opinion of a majority of the court the speed of the car upon a roadway substantially free from traffic without intersecting streets and without obstruction of vision, the passing of another vehicle in the manner described, the act of turning the wheel quickly, to the left, and the turning over and sliding of the car as hereinbefore stated, whether considered separately or in conjunction, do not tend to prove such 'indifference to present legal duty and utter forgetfulness of legal obli-

gations so far as other persons may be affected' as to constitute 'a heedless and palpable violation of legal duty' to the plaintiff or a 'manifestly smaller amount of watchfulness and circumspection' than the circumstances required." See Altman vs. Aronson, supra.

In the much earlier case of Massaletti vs. Fitzroy 228 Mass. 487, 118 N.E. 168 referred to in the case last above mentioned it was held that one who was traveling gratis in a motor car in company with its owner and was injured by reason of the negligence of the owner's chauffeur resulting in the overturn of the machine and the injuries complained of, the jury found that the accident was due to the negligence of the defendant's servant, the chauffeur, the trial judge directed a verdict nevertheless for the defendant. In disposing of the case with an elaborate and exhaustive discussion of degrees of negligence by Mr. Justice Loring in the course of the opinion it was said:

"It was decided in West vs. Poor, 196 Mass. 183, that a defendant who invites a plaintiff to ride gratis in his carriage is liable to the same extent that a gratuitous bailee is liable."

In concluding the opinion this was said:

"Approaching the question apart from authority we are led to the same conclusion. Justice requires that the one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay. There is an inherent difficulty in stating the difference between the measure of duty which is assumed in the two cases. But Justice requires that to make out liability in case of a gratuitous undertaking the plaintiff ought to prove a materially greater degree of negligence than he has to prove where the defendant is to be paid for doing the same thing. It is a distinction which seventy-five years' practice in this Commonwealth has shown is not too indefinite a one to be drawn by the judge and acted upon by the jury.

"We are of opinion that the decision in West vs. Poor should be affirmed and followed in the case at bar." And judgment in favor of defendant was ordered.

It was held in Loughran vs. Nolan 307 Mass. 195, 29 N.E. (2d) 737 that: A speed of 30 to 35 miles an hour at which an automobile was being operated on a dark, rainy afternoon on a narrow, winding and slippery road would not, in and of itself, amount to "gross negligence" which would render driver liable for injuries sustained by automobile guest, and also that in the guest's action against the driver for injuries sustained that the automobile was being operated at the stated speed with road and weather conditions as related above, the skidding of the car over the side of a bridge and dropping into a river the fact that the automobile skidded did not warrant the finding of "gross negligence" necessary to render the driver liable.

The case last cited was an action by Loughran against Nolan for injuries sustained while riding as a guest in an automobile operated by the defendant. The verdict for defendant was directed upon a stipulation of the parties that the law of Virginia, where the accident happened, was the same as that of Massachusetts and that the defendant was liable for "gross negligence" only. Plaintiff's exceptions were over-ruled and judgment was ordered for the defendant by the reviewing court. In this connection, see relative to the law governing skidding automobiles above where there was no gross negligence involved. Wallis vs. Nauman 61 Wyo. 231, 157 P. (2d) 285; 2 Blashfield's Cyclopedia of Automobile Law and Practice (Perm. Ed.) page 58 § 916 says that:

"Ordinarily one will not be held guilty of negligence in failing to keep to the right of the highway, where that is impossible by reason of circumstances over which he has no control, and for which he is in no sense responsible. For example, where defendant's automobile,

through no fault of the driver, skidded on a slippery pavement and was thrown across the center line and collided with plaintiff's automobile,"

The case of Smith vs. Turner 178 Va. 172, 16 S.E. (2d) 370 is far afield from being of assistance here, though much relied upon by appellant. There as the quotation made by counsel from the Court's opinion shows, the facts can hardly be regarded as of "great similarity" to those at bar. The quotation counsel makes from the Court's opinion sets out this language:

"We held in Collins vs. Robinson, supra (160 Va. 520, 169 S.E. 609), that driving on the wrong side of the road at night, around a curve into the path of an on-coming car, where the view is obstructed, was gross negligence as a matter of law. A fortiori needlessly driving on the wrong side of a straight road in broad daylight, in the face of a car rapidly approaching from the opposite direction and in plain view, is likewise gross negligence."

In the case at bar Bechtold had driven for 50 miles on his own side of the road and without experiencing any trouble and until confronted with the situation disclosed at the scene of the accident if there was any crossing of the center line of the highway it was done in the last 30 to 40 feet before the impact of the collision and in a mere fraction of a second, at the speed the two vehicles were traveling.

Taking the case of the plaintiff in the most favorable view thereof as we are obliged to do we find that Mr. Long, the driver of the L. C. Jones Trucking Company's truck stating in substance that when the jeep was 50 feet in front of him it skidded and was out of control, but not over the center line of the highway; thereupon the driver got it under control for 10, 15 or 20 feet and then it skidded once more and this second time passed across the center line of the highway directly into his traffic lane.

This description of the accident hardly supplies any evidence that the driver of the jeep, Bechtold, was at fault in skidding into the path of the truck, nor do we find any other evidence in the record from which it could be so inferred. In the Mitchell case supra, it was intimated that "momentary misjudgment" under the circumstances of an impending collision on a slippery highway would not be sufficient to make out a case of gross negligence against him as charged in plaintiff's petition. It is quite apparent too that Bechtold, according to the driver Long's testimony, was endeavoring to avoid a collision. of the two vehicles. Long said the Bechtold car skidded and despite that first skid Bechtold was able to keep his vehicle from crossing the center line of the highway and guide it under control once more, but that the second skid a few feet later on threw the Bechtold car into the path of the truck. This would hardly seem to establish gross negligence, that "indifference to present legal duty and * * * utter forgetfulness of legal obligations" which our statute declares must exist before a liability arises, § 60-1201 W.C.S. 1945, Altman vs. Aronson, supra.

Such being our view of the matter at bar we think that the trial judge was correct in directing a verdict for the defendant, Bechtold, and the judgment entered thereon should accordingly be affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.