Debra RAMIREZ, Appellant
(Plaintiff below),

v.

METROPOLITAN LIFE INSURANCE COMPANY, Appellee
(Defendant below).

No. 4895.

Supreme Court of Wyoming.

June 23, 1978.

Patrick E. Hacker of Patrick E. Hacker & Associates, Cheyenne, for appellant.

John B. Rogers, Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

The plaintiff-appellant is the widow of the late Raul Ramirez and the beneficiary of a life insurance policy issued by defendant-appellee, Metropolitan Life Insurance Company upon his life. Plaintiff brought an action seeking to recover the double-indemnity benefits provided for under the terms of the policy, which benefits had been refused by the Insurance Company. The district court, at the close of plaintiff's evidence, directed a verdict for the defendant. We will reverse.

On November 20, 1974, Raul Ramirez purchased a life insurance policy with double-indemnity provisions from Marvin Nelson, Metropolitan's agent, the premiums to be paid by Metropolitan's drafting against the bank account of Ramirez according to his authorization. Premium payments were timely made until, on May 22, 1975, Metropolitan's draft upon the Ramirez account was returned marked "insufficient funds." The policy-grace-period expired June 20, 1975, by which time Ramirez had still not made his delinquent premium payment. On June 25, 1975, the Western Head Office of Metropolitan Life Insurance Company mailed a letter to Raul Ramirez, in which it notified him that the May 22, 1975, draft had been returned for insufficient funds and the Company had discontinued drawing checks on the account. The letter, which is set out in detail later in this opinion, requested the insured to let the Company know when it could resume drawing checks or, if the Check-O-Matic feature was to be discontinued, Ramirez was asked to inform the Company how future payments would be made. Agent Nelson testified that on June 27 or 28, Raul Ramirez telephoned him to discuss the fact that there was not sufficient money to cover the most recent draft. On this occasion, the agent told Mr. Ramirez to get the money in the account and to contact him at the first of the following week. Mrs. Ramirez and her husband made plans to meet with Nelson during that week. Nelson asserts that he made no representations concerning coverage during his telephone conversation with Ramirez.

The plaintiff, Debra Ramirez, was not permitted to give hearsay testimony concerning conversations with her husband, wherein she said he related to her certain representations purportedly made to him by Agent Nelson. These conversations and any alleged reliance thereon by plaintiff-Ramirez are not essential to this decision since we hold that there was a jury question on the issue of whether or not the Company waived its right to rely upon Ramirez' default by reason of its acts and the acts of its agent, independent of what those actions might have been as reflected by hearsay testimony.

Raul Ramirez was killed in an automobile accident on July 4, 1975, and, after the funeral, Nelson furnished the claim form to Mrs. Ramirez and mailed it to the Company for her. A death certificate was received by the Company on August 28, 1975. On September 23, 1975, Metropolitan issued a draft against the bank account of the deceased for payment of the May, June, July, August and September premium payments. The money covering this draft was received by the Company and retained until November 5, 1975, when Metropolitan tendered a refund check, which was refused. Nelson could not explain why the Company delayed so long before returning the five months of premiums.

### ISSUES ON APPEAL

The appellant asks us the following question for our decision:

By its actions, did the Company waive the default, or is it estopped from denying that the double-indemnity provisions remained in force after default in the payment of the premiums?

## WAIVER[1]

██ As this court has observed, the elements of waiver are (a) existing right; (b) knowledge of that right; and (c) intent to surrender or relinquish it. *Ranger Insurance Company v. Cates,* Wyo., 501 P.2d 1255. In this appeal, the only element of waiver whose existence is in question is whether or not Metropolitan, by its acts, can be regarded as having intended to surrender or relinquish its default rights. In addressing *that* issue (in the directed-verdict context), we have only to determine whether or not the facts were such as to structure a jury question.

We have held the standard against which a directed verdict is to be tested is that the court will assume all of plaintiff's evidence to be true and will draw every favorable inference which might reasonably flow therefrom. *Brasel & Sims Construction Company v. Neuman Transit Company,* Wyo., 378 P.2d 501; *Potts v. Brown,* Wyo., 452 P.2d 975; and *Hawkins v. L. C. Jones Trucking Company,* 68 Wyo. 275, 232 P.2d 1014. See, also *Barnes v. Fernandez,* Wyo., 526 P.2d 983, 985.

The Supreme Court of South Carolina, in *Graham v. Suggs* (S.C.1977), 239 S.E.2d 644, 645, put it this way:

"Under settled principles, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the party opposing the motion. *Allstate Insurance Company v. State Farm Mutual Automobile Insurance Company,* 260 S.C. 350, 195 S.E.2d 711 (1973); *Blanding v. Hammell,* 267 S.C. 352, 355, 228 S.E.2d 271 (1976). Upon so viewing the evidence, if more than one reasonable inference can be drawn, or if the inferences are in doubt, the motions should be denied. *Ray v. Simon,* 245 S.C. 346, 140 S.E.2d 575 (1965); see also decisions collected in 3 S.C.Digest, Appeal &

Error, Wigmore on Evidence, §§ 2494, 2495; McCormick on Evidence, § 338."

In *Western Transmission Corp. v. Colorado Mainline, Inc.,* 10 Cir. (Wyo.), 376 F.2d 470, it was said:

" . . . In considering such a motion (for directed verdict) the court must view the evidence in a light most favorable to the party against whom the motion is directed and if the evidence and the inferences drawn therefrom would cause reasonable and fair-minded persons to form different conclusions of the facts in issue the motion should not be granted. . . ." [Footnote omitted; and parenthetical matter supplied]

We said in *Holstedt v. Neighbors,* Wyo., 377 P.2d 181, 181–182:

"It goes without saying that, in passing upon a motion for a directed verdict, the evidence must be taken in the light most favorable to plaintiff, and we must accept the whole body of evidence in the strongest way it reasonably can be interpreted in support of plaintiff's claim. *Cheney v. Wheeler,* 122 Vt. 295, 170 A.2d 642, 643; *Parker v. Gunther,* 122 Vt. 68, 164 A.2d 152, 153; *Geiger v. Schneyer,* 398 Pa. 69, 157 A.2d 56, 57; 2B Barron & Holtzoff, Federal Practice and Procedure, § 1075, p. 378 (1961)."

██ The rule which guides directed-verdict appellate deliberation was recognized in *Barnes v. Fernandez,* supra, where we said:

"Whether the evidence is sufficient to create an issue of fact for the jury is solely a question of law to be determined by the court, and upon appeal the reviewing court gives no deference to the view of the trial court. Wright & Miller, Federal Practice and Procedure: Civil § 2524, Vol. 19, pp. 541–542."

1. In *American National Insurance Company v. Cooper,* 169 Colo. 420, 458 P.2d 257, 260, the court said:

"Although there are generally recognizable distinctions between waiver and estoppel, 'It may be proper to suggest * * * that estoppel in pais, like waiver, is recognized at

law as well as in equity; also that waiver and estoppel in pais are often employed in insurance law as synonymous terms and used indiscriminately.' *German American Insurance Company v. Hyman,* 42 Colo. 156, 94 P. 27, 16 L.R.A.,N.S., 77."

In addition to the limited circumstances in which a directed verdict will ordinarily be granted, according to the stern strictures of the rules of law just quoted, such disposition is even more tightly confined when the law governing insurance contracts is taken into account. A basic tenet of insurance law proclaims that forfeitures are not favored. Some courts have viewed forfeiture of insurance contracts as "abhorrent." *Montano v. Missanellese Society of Mutual Aid,* 72 Misc. 515, 130 N.Y.S. 455. The subject of forfeiture of insurance benefits is described in 16A Appleman, Insurance Law and Practice § 9082, pp. 289–290, as follows:

"Courts are always prompt to seize upon any circumstances that indicate an election to waive the forfeiture of a contract of insurance, or any agreement to do so, on which the party has relied and acted. *Forfeitures are not favored if there are any circumstances indicating a waiver thereof.* Such forfeitures will be enforced only where there is the clearest evidence that such was the intention of the parties, and slight circumstances are sufficient to indicate the intention of the insurer to effect a waiver.

"It has always been a principle of the law of insurance that forfeitures are not looked upon with favor, and the doctrine of 'waiver' was evolved in order to obviate forfeitures which seemed unfair to the court. In passing on the question of the waiver of conditions in an insurance policy inserted for the insurer's benefit, a court will deal generously with the insured. The same rule of liberal construction in favor of the insured applies as governs in the construction of the contract itself . . . ." [Footnotes omitted; emphasis supplied]

What facts, then, does the record present which bear upon the question of Metropolitan's intent to relinquish its default rights as provided by the policy?

On June 25, 1975, when it mailed its letter to Raul Ramirez, Metropolitan knew that its May 22, 1975 draft on the Ramirez account had been rejected for insufficient funds and knew that the grace period had expired without further payment having been made. When the grace period expired on the 20th of June, 1975, there was no double-indemnity insurance in force. At this juncture, Ramirez, absent agreement with or waiver upon the part of the Insurance Company, had no rights upon which he could insist under the double-indemnity clause.

On June 25, 1975, the Company wrote to Mr. Ramirez as follows:

"METROPOLITAN LIFE
Western Head Office
One Metropolitan Plaza
P.O. Box 7750
San Francisco, CA 94120

"Mr. Raul L. Ramirez
3202 Locust Drive
Cheyenne, Wyoming 82001
 Policy No. 745 105 091 A

Dear Policyholder

The check dated May 22, 1975 for the Check-O-Matic premium of $23.48 has been returned unnegotiated by the East Cheyenne National Bank, and marked insufficient funds.

As a result, we have discontinued drawing checks against this account. It is possible, however, that a check for the next premium has already been drawn and may also be returned unpaid.

If a Change of Bank form has already been submitted, or is to be submitted, please disregard this letter as the drawing of checks will be resumed under your new account for any premium(s) due. Please let us know promptly when we may resume drawing checks by inserting the following information.

<u>Redraw check(s)</u>

| After Date | Name of Bank | Account No. |
|---|---|---|

If, however, the policy is no longer to continue on a Check-O-Matic arrangement, please let us know how future premiums are to be paid in the space provided below.

Sincerely,
s/ Frances Muhldorfer
Miss Frances Muhldorfer
Special Accounts Section
Administration Division
June 25, 1975
FM:FNL"

After sending this letter—which we believe is subject to a fact-finder's interpretation as to whether or not the Company then presumed the policy and its double-indemnity provision to be in effect—and with knowledge of Ramirez' death and the claim by the beneficiary for the double-indemnity benefits, the Company, on September 23, 1975, undertook to draft the Ramirez account for five months' premium. The Company received the money covering a period of time which included months prior, as well as subsequent, to Ramirez' death, and kept it until November 5, 1975, when it unsuccessfully attempted to return the funds.

A strikingly similar fact situation arose in *American National Insurance Company v. Cooper,* 169 Colo. 420, 458 P.2d 257, where the district court ruled in favor of insured and the Supreme Court affirmed. There—as here—the dispute had to do with the Company's receipt and retention of premiums paid on behalf of the insured on the day following the accident. There—as here—strict application of the terms of the policy would preclude recovery unless the conduct of the Company constituted waiver.

In the *American National Insurance Company* case, the company had issued the policy with a 31-day grace period, with a provision that the premiums were to be paid from insured's checking account. The premium draft was returned because Cooper closed his account at that bank. American National then sent a letter very similar to the one involved here, in which it discussed ways of correcting the delinquency and which communication was couched in terms subject to the interpretation that the Company, when the letter was sent, regarded the policy to be in full force and effect. This reached the insured's home after he was injured that same day. Premium payments were made and accepted after complete disclosure of the accident and injury. As here, there was no application for reinstatement asked for and no conditional receipt issued.

■ The Colorado Supreme Court then stated the following rule and authorities—with which we agree.

"A Colorado decision which states the rule recognized in many jurisdictions under facts similar to those before us is *International Service Union Company v. Mascarenas,* 99 Colo. 285, 61 P.2d 1025. In *Mascarenas,* the court stated:

" 'The authorities hold that where with knowledge of the death of the insured the company retains a premium payment without which liability would not attach, it is estopped to deny liability. *Schuster v. Knights and Ladies of Security,* 60 Wash. 42, 110 P. 680; *Knights and Ladies of Security v. Bell,* 93 Okl. 272, 220 P. 594; *Peterson v. Modern Woodmen of America,* 127 Wash. 412, 220 P. 809. It has been held that the rule applies when concededly the insured was dead when the premium was paid. *Modern Woodmen of America v. Jameson,* 48 Kan. 718, 30 P. 460. The company may circumvent such result by promptly returning the premium on coming into knowledge that death preceded payment. Brown v. Knights of Protected Ark, 43 Colo. 289, 96 P. 450; Miller v. Union Cent. Life Co., 110 Ill. 102 \* \* \*.'

To the same effect: *Washington National Insurance Company v. Scott,* 231 Ala. 131, 164 So. 303; *Smith v. Liberty Life Insurance Company,* 118 Neb. 557, 225 N.W. 688; *Fort Worth Mutual Benevolent Association of Texas v. Akin,* 9 S.W.2d 398 (Tex.Civ.App.); *Mills v. Continental Life Insurance Company,* 162 Wash. 555, 298 P. 739." [Emphasis supplied]

■ Could it not be said—under the facts of the case with which we are here concerned—that a jury composed of reasonable people might decide that the rule of waiver announced in *American National Insurance*

was *not circumvented* where the Company—with knowledge of death—demanded and received five months worth of premiums and kept the money for forty-three days before offering it back? If the answer is in the affirmative—then a directed verdict is inappropriate.

In *Faris v. American National Assurance Company,* 130 Cal.Rptr. 212, 185 P. 1035, the court was concerned with a provision in a life insurance policy to the effect that the policy would automatically terminate upon a default in paying the premiums. The court held the termination provision was waived by correspondence between the parties in which the insurer recognized the policy's continued existence and discussed the insured's desire to reduce the face amount of the policy. We have such correspondence here.

In *Inter-Ocean Casualty Company v. Anderson,* 245 Ala. 534, 17 So.2d 766, the Supreme Court of Alabama considered a fact situation in which the insurer received a check from the insured and made several attempts up to and including the date of the insured's death to collect the check. The court held that under the circumstances it was for the jury to determine whether the insurer had waived strict compliance with the provisions of the accident policy respecting payment of premiums on the due date.

In *Shawnee Mutual Fire Insurance Company v. Cannedy,* 36 Okl. 733, 129 P. 865, the Oklahoma Supreme Court held that a clause in a policy to the effect that if notes held by the insurer were not paid at maturity the policy would be null and void, was waived when the company retained the notes and endeavored to collect them in full.

In *Freise v. Metropolitan Life Insurance Company,* 206 Ill.App. 404, it was held that where late payments had been accepted in the past, and after the death of the insured the beneficiary paid an overdue premium at the office of the company without saying anything about the insured's death, the acceptance of the premium was evidence of intent to waive the forfeiture.

For other cases supporting the same general proposition, see *Central National Insurance Group of Omaha v. Grimmett,* Ala., 340 So.2d 767 (1976) (acceptance of premium on lapsed policy with knowledge by agent that an accident had occurred during periods of lapse constituted waiver); *Aetna Casualty & Surety Company v. Condict,* U.S.D.C., Miss. (1976), 417 F.Supp. 63 (retroactive issuance of an insurance policy by agent with knowledge of an accident constituted waiver).

In this appeal, as we contemplate the trial court's directed verdict, we are confronted by a fact situation in which an insurance company appears to have treated the policy as continuing in effect four days after the grace period had expired—a company which knew, or is chargeable with knowledge, that death of the insured occurred after the grace period without payment of delinquency having been tendered and—with this knowledge—drafted the decedent's account for five months worth of premium payments, retaining the money for forty-three days before attempting to return it.

We cannot say—under the prevalent authority on the subject—that—*as a matter of law*—these facts presented *no circumstances* upon which a fact-finder could decide that when the Company acted as it did, with the knowledge that it had, there was no intent upon its part to waive the default provisions of its policy.

### THE COMPUTER

The Company argues that its computer made a mistake when it drafted Ramirez' account for past-due premium payments. In the first place, mistake is a fact which—like fraud—must be shown by a high degree of proof warranting an instruction that it must be established with "clear and convincing proof." 75 Am.Jur.2d, Trial, § 821, Degree of Proof, Rule in Civil Cases, Generally, p. 714. This renders the defense of mistake incompatible with a judgment upon a directed verdict in favor of the defendant. Secondly, we have a

hard time embracing a rule of law which says that the Company will not be responsible for the acts of its computer. The comments of the court in *Ford Motor Credit Company v. Swarens,* C.A.Ky., 447 S.W.2d 53, 57, are relevant:

"Ford explains that this whole incident occurred because of a mistake by a computer. Men feed data to a computer and men interpret the answer the computer spews forth. In this computerized age, the law must require that men in the use of computerized data regard those with whom they are dealing as more important than a perforation on a card. . . ."

If business is to be done with computers, those who assign them to deal in their behalf with third persons cannot accept the good things they do while rejecting liability for their errors. In *Neal v. United States,* U.S.D.C., N.J., 402 F.Supp. 678, 680, the court noted:

". . . Those who use computers for record and accounting purposes, including the government, are accordingly obligated to operate them with suitable controls to safeguard the reliability and accuracy of the information. . . ."

Another way of putting it is to say that if we are, in this day and age, going to live by computers, it may be that we will also have to die by them.

The judgment entered upon Metropolitan's motion for a directed verdict is reversed and the case is remanded to the trial court for further appropriate proceedings not inconsistent herewith.

Reversed.