Tim WEAVER and Allison Weaver,
Appellants (Plaintiffs),

v.

BLUE CROSS–BLUE SHIELD of WYO-
MING, Appellee (Defendant).

No. 5207.

Supreme Court of Wyoming.

March 28, 1980.

W. H. Vines of Jones, Jones, Vines & Hunkins, Wheatland, signed the brief and appeared in oral argument on behalf of appellants.

Blair J. Trautwein of Hathaway, Speight & Kunz, Cheyenne, signed the brief and appeared in oral argument on behalf of appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

In this appeal, we are concerned with the rights, both contractual and noncontractual, of an individual to convert a group health insurance policy to another group policy or to an individual policy and, at the same time, maintain continuous coverage which avoids repeating lengthy waiting periods for certain types of coverage. The appellant, Allison Weaver, made several attempts to convert her coverage with appellee, Blue Cross-Blue Shield, to another type of policy when she learned her employer was gong to cancel the group policy under which she was covered. The appellant was pregnant at the time, and her employer intended to switch to a group which did not include pregnancy benefits. Appellant had been a member of the group for almost five years at the time these events transpired. She was told by appellee's employee that the conversion was possible. However, due to clerical error on the part of appellee, the conversion did not take place in a timely manner and when the employer terminated the group policy in mid-October 1977, the appellee refused to give appellant a policy that would include continuous coverage. Upon motion of the appellee, the district court granted summary judgment in its favor. The appellant asserts:

(1) The district court erred in granting summary judgment for appellee, because there is a genuine issue of material fact as to whether employees of appellee bound the appellee to provide the benefits sought by the appellant and as to whether those employees waived policy provisions by their statements and actions;

(2) The district court erred in applying the law to the facts that were established, because the maternity coverage vested in the appellant at the time she became pregnant when the original group policy was still in force;

(3) The policy does not speak to the circumstances which arcse in this case.

Ambiguities in such a policy should be interpreted in a light most favorable to the insured.

We will reverse the summary judgment of the district court and remand for additional proceedings.

The appellant began working for Basins Engineering Company, Inc. in Wheatland in October 1972 and became insured by appellee in November 1972. From that time until October 16, 1977, she was covered by one of appellee's group policies which included maternity benefits. The appellant became pregnant in July 1977. In September 1977, her employer was comparing other group health insurance plans with a view to a change because of complaints about appellee's service and rising costs. The employer asked if any of its employees or their spouses were pregnant. Appellant informed her employer that she was. In September 1977, the employer had requested from the appellee's member service center information on how to transfer an employee to an individual policy so that continuous coverage could be maintained. No information was provided by appellee, although one of its employees indicated in a telephone conversation this could be done. On October 11, 1977, appellant herself called appellee and requested such information. Again, it was not provided, although appellant claims the employee to whom she spoke assured her there would be no problem with such a changeover which would provide continuous coverage. The employer's policy was apparently canceled as of midnight October 15, 1977. Appellant then signed up for another of appellee's groups, a bank depositor group, on October 31, 1977. The insurance agent through whom appellant obtained the policy also assured appellant there would be no problem with continuous coverage. Very shortly thereafter appellant was informed by appellee that she was not entitled to continuous coverage. On April 22, 1978, the appellant gave birth to a child by caesarean section and incurred ex-

penses of $2,323.25. The appellee refused to pay benefits to the appellant. The appellant then filed this lawsuit. Appellee answered generally denying the claim of appellant. Appellee also named the employer as a third-party defendant whom appellee claimed would be liable for any sum it might be required to pay appellant. The employer filed a motion to dismiss and the third-party complaint of the appellee was dismissed with prejudice. No appeal was lodged concerning that dismissal.

The district court granted the appellee's motion for summary judgment without providing any reasons or explanations. Although the specific basis or bases upon which a summary judgment is granted is not a mandatory part of the record, the absence from the record of the district court's reasoning process is a handicap to this court, and we would prefer that the reasons for granting a motion for summary judgment appear clearly in the record. *Centrella v. Morris*, Wyo.1979, 597 P.2d 958.

The case is before us in the posture of a summary judgment in favor of appellee. An appellee defending a summary judgment has a heavy burden in this court. In the last several terms, we have reversed a number of summary judgments. While the rule [1] governing summary judgment is a useful tool to cut short litigation in which there is no useful purpose for trial, it is not a useful device for deciding doubtful cases in a summary manner and passing difficult questions of law on to this court for resolution with an inadequate record.

In dealing with a motion for summary judgment, this court has a number of well-defined, and now too-often-repeated, rules that guide our disposal. The motion for summary judgment is a drastic remedy and one which is designed to pierce the formal allegations and reach the merits of the controversy—but only when no material issue of fact is present. *Minnehoma*

---

1. Rule 56, W.R.C.P. For a good treatment of the federal rule which is virtually identical to our rule, see generally 10 Wright and Miller, Federal Practice and Procedure, Civil, §§ 2710,

et seq. We have frequently expressed our view that federal authority in regard to these rules as well as W.R.Cr.P., W.R.E., and W.R.A.P. is highly persuasive in this court.

*Financial Company v. Pauli*, Wyo.1977, 565 P.2d 835, 838; *Keller v. Anderson*, Wyo. 1976, 554 P.2d 1253. The propriety of granting a motion for summary judgment depends on the correctness of the court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. *Laird v. Laird*, Wyo.1979, 597 P.2d 463, 466. A summary judgment is proper only where no issue of material fact is involved and where inquiry into facts is not desirable to clarify the application of the law. *Johnson v. Soulis*, Wyo.1975, 542 P.2d 867, 871. Although both parties are obligated to come forward with their evidence, the burden is on the moving party to demonstrate *clearly* that there is no genuine issue of material fact and if that is not done, the motion for summary judgment should be denied. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in the affidavits, exhibits, and depositions. *Miller v. Reiman-Wuerth Company*, Wyo.1979, 598 P.2d 20, 24; *Shrum v. Zeltwanger*, Wyo.1977, 559 P.2d 1384, 1388; *Greenough v. Prairie Dog Ranch, Inc.*, Wyo.1975, 531 P.2d 499, 503. The object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial so that only the latter may subject a suitor to the burden of a trial, the purpose being to eliminate formal trials where only questions of law are involved. *Johnson v. Soulis*, supra, 542 P.2d at 869. When a motion for summary judgment is before this court, we have exactly the same duty as the trial judge and, if the record is complete, we have exactly the same material and information in front of us as he did. We follow the same standard as the trial court. We apply the above-described tests in a way designed to give the party who defended the motion the benefit of *any* doubt as to the propriety of granting summary judgment. *Hunter v. Farmers Insurance Group*, Wyo.1976, 554 P.2d 1239, 1244.

In this case, there appears to be no great disagreement about the evidentiary facts. However, it is very clear that the parties, justifiably, put two different interpretations on these facts. If the evidence is subject to conflicting interpretations or reasonable minds might differ as to its significance, summary judgment is improper. *Fegler v. Brodie*, Wyo.1978, 574 P.2d 751, 753–755. While this rule has its roots primarily in negligence cases, we think it is applicable in the circumstances of this case as well. Here the appellant claims she made a good faith and honest effort to transfer her health insurance to another group or an individual policy so that she would be able to maintain continuous coverage. This was of great importance to her because she was pregnant, had been enrolled with appellee for over five years and had fully completed all waiting periods for pregnancy coverage. It seems plain that appellant made an effort to maintain continuous coverage. In response to her inquiries, she was assured on several occasions that she could obtain continuous coverage but due to mix-ups, nothing was done to convert her group policy to another group or an individual policy until the eleventh hour—and then without the benefit of continuous coverage.

Appellee, on the other hand, while not denying that the facts are essentially as appellant alleges, casts the facts in such a way as to indicate that appellant gave appellee incomplete information and, indeed, was deceptive, if not fraudulent, in failing to reveal that she was pregnant and that her employer was about to cancel the group policy of which she was a member. The appellee fails to demonstrate why appellant was under a duty to reveal these facts. If appellant was entitled to move to another group and maintain continuous coverage, what difference does it make that she was pregnant? That is the very purpose of insurance and continuous coverage. And what difference does it make if her employer is about to cancel the group? If appellant is entitled to convert her policy to another group or an individual policy, why

is she inhibited from doing so by proposed future acts of her employer? These questions are unresolved by the summary judgment and appellant is entitled to the necessary court proceedings to bring them to light.

After a review of this record, this court is riddled with doubts about the summary adjudication. We shall enumerate some of these. The record does not contain the contract appellant entered into on October 31, 1977, when she joined the bank depositor's group. What are its provisions, and in accordance with Schedule A, § I.1, infra, did she terminate her affiliation with one group and become affiliated with another? That contract section talks about "regulations for 'Group Conversion.'" Those regulations are likewise not in the record and we sense with some certainty that they may play a significant role in any determination of this case.[2] If, upon scrutiny, these contracts and regulations allow the appellant to make a conversion and maintain continuous coverage, the appellee's reliance on them for summary judgment could not be grounds for sustaining a judgment in its favor. We wonder if the appellant continued to pay premiums after October 31, 1977. The record does not reveal the answer to this and it would appear to be a matter of some importance.

The real heart of this case is, of course, whether or not the appellee should be bound by the oral representations made by its various agents. This court does not perceive the question to be whether the agents waived provisions of a governing contract, but rather whether it should be estopped from claiming that appellant did not sign up for the new group in time to get continuous coverage, when under the contracts and regulations she was allowed to make such a conversion. If appellee, by its oral promises and actions, effectively prevented the appellant from making the conversion

in time, as appellant claims is the case, and if a fact finder agrees with her, then the appellant may be entitled to relief.

Appellee asserts that the master contract governs in this case, and therefore summary judgment is required as a matter of law. To bolster this assertion, appellee relies primarily upon a part of the contract, Schedule A, § S.3.d:

"d. *Termination of Benefits on Termination of Master Agreement*: Upon Termination of this Master Agreement, for any reason whatsoever, all benefits for services provided in this Agreement to Applicant or Subscriber, entitled to payment and/or reimbursement under this Agreement, shall also terminate and Plan will not make any such payment and/or reimbursement for or on account of services rendered after the date of termination, irrespective of the fact that an Applicant may be hospitalized and/or receiving benefits on the date of termination."

However, the contract also provides in Schedule A, § I.1:

"I. Change of Employment Status: Should the *employment status* of a Subscriber change, *the Plan reserves the right to reclassify the membership.*

"1. Should the Member leave the employ of the Employer, or *terminate affiliation with the Group* * * * while the coverage is in effect and be employed by another Employer, *or become affiliated with another Group* having, a Blue Cross & Blue Shield of Wyoming Group plan, the Member may transfer to, and shall be limited to the coverage provisions applicable to such other Group. Should the Member be unemployed, or employed by another employer or affiliated with another group or entity not having a Blue Cross and Blue Shield of Wyoming Group plan, then the Member shall no longer be deemed to be a member of a Plan Group

2. The appellant did not call these matters into question, apparently because she was relying on other theories that did not make them necessary. However, the appellee relies almost entirely on the contract, and before it is entitled to summary judgment, it is required to demonstrate clearly that it is entitled to judgment as a matter of law.

herein, and the Member's dues shall be payable by the Member directly to the Plan at Non-Group dues and the Member shall be limited to the provisions applicable to Non-Group Subscribers of the Plan according to Plan regulations for 'Group Conversion.' The Member has thirty (30) days from the date of termination of employment to make application to the Plan for transfer of the Membership. * * *" (Emphasis added.)

Although this latter contract provision does not seem to specifically cover the exact circumstances of this case, it does appear to set out potential transfers for someone like the appellant. The appellant claims appellee's employee assured her the transfer was readily available and the contract would appear to bear this out—this is so even though the employee/appellant did not "leave" or "terminate" her employment, as such. The thirty-day grace period after termination of employment is talked about only in the context of termination. Exactly what grace period is available under the other circumstances discussed in that paragraph is not clear from the contract. What grace period is available for those other circumstances will most likely have to be fleshed out in the additional proceedings required in this decision. In any case, we make no holding in that regard.

▮▮▮ In any case, where there is any doubt about the meaning of a written instrument, there arises an issue of fact to be litigated and summary judgment is inappropriate. *Meuse-Rhine-Ijssel Cattle Breeders of Canada Ltd. v. Y–Tex Corporation*, Wyo. 1979, 590 P.2d 1306. There are in this case factual questions to be resolved that turn on uncertainties in the meaning and the extent of this contract. Although appellant did not specifically rely on the contract in the original pleadings, it is apparent that this may well have been the ultimate case proved by the appellant had she been permitted development of her case. Rule

15(b), W.R.C.P. Clearly the appellee called the Master Contract into evidence and in the current posture of this case, we cannot permit it, or the district court, to rely only on those contract provisions which support granting summary judgment and ignore those which are to the benefit of the appellant. It was the appellee's burden to clearly demonstrate that under no circumstances was appellant entitled to the relief she sought.

The general authorities also point to the conclusion that cases such as that before us do not lend themselves to summary treatment, except perhaps in instances where there is no dispute whatsoever as to the relevant facts and the applicable law is clear. See *Hunter v. Farmers Insurance Group*, supra, 554 P.2d at 1243, where it is indicated that there are some circumstances where an insured may rely upon the oral representations of an agent; and see, 1 Appleman, Insurance Law and Practice, § 48, pp. 75–76 (1965).

We are not dealing in this case with a legal question that is well delineated in the law. Indeed, there are few cases if any that are directly in point, and those are in serious conflict. See, for example, Annot., 66 A.L.R.3d 1192; Annot., 66 A.L.R.3d 1205, § 3(b). Without so deciding, the facts when fully developed may fit the waiver and disfavor for forfeiture doctrines enunciated in *Ramirez v. Metropolitan Life Insurance Co.*, Wyo.1978, 580 P.2d 1136.

The cases principally relied upon by appellant for the theory that the right to benefits vested when she became pregnant while the first group contract was in force are discussed in the annotations cited immediately above. In view of the rather plain language of the contract, Schedule A, § S.3.d, supra, the holdings of those cases are not in point, and the theory which forms the foundation of those decisions could not be applicable in this case under a "vesting" theory.[3]

---

**3.** This does not eliminate the possibility that under appropriate factual circumstances such a contractual provision could, for example, be held to be unconscionable.

Cases such as this turn on their facts and because no well-reasoned and well-developed body of law exists, the voluminous body of law relating to insurance must be searched for appropriately analogous rules which are apposite in light of the facts. This cannot be done on an abbreviated and incomplete record such as this. Further proceedings are required.

The summary judgment of the district court is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.