**FORD MOTOR CREDIT COMPANY,**
Appellant,

v.

**John T. SWARENS, Appellee.**

Court of Appeals of Kentucky.

Oct. 17, 1969.

F. L. Pearl, Pearl & Trevathan, Willie T. Puckett, Louisville, for appellant.

Edwin I. Baer, Louisville, for appellee.

REED, Judge.

The appellee, Swarens, sued the appellant, Ford Motor Credit Company, because Ford wrongfully repossessed his automobile. After a trial before a jury, judgment was entered pursuant to a verdict that Swarens recover from Ford $2,000 compensatory damages and $5,000 punitive damages. The judgment was entered on June 27, 1968. Ford served and filed a motion and grounds for new trial on July 10, 1968. On July 12, 1968, this motion was overruled. Ford appeals. The errors asserted are: the trial judge made comments which were prejudicial because they influenced the jury to make an excessive award; the compensatory damages and the punitive damages are excessive; and the instructions given to the jury by the trial judge were erroneous. It is our conclusion that the question of the excessiveness of damages was not properly preserved for appellate review; that the comments of the trial judge complained of were not prejudicial; and that the instructions were correct. We affirm the judgment.

In February 1963, Swarens purchased a 1962 Ford car from a dealer in Indiana for about $2,300. The unpaid part of the purchase price was the subject of a security agreement that was assigned by the selling dealer to Ford Motor Credit Company. The agreement provided for monthly installment payments to be made to Ford's home office in Michigan. Swarens made the payments as required, but in June 1963, he was visited by employees of Ford's Louisville, Kentucky, collection office.

These Ford representatives told Swarens that he was delinquent in his payments. He showed them his cancelled checks which clearly established that he was current in payments. Two months later, the visit, the accusations of delinquency, and the proof to the contrary occurred again. Finally, in October of 1963, the collectors returned for the last time and Swarens, who Ford admits was at all times current in his payments, was tired of their visits; he advised them that he would show them no more records, and while displaying a shotgun, he also strongly suggested that they leave his home. They left, but first reminded him of their experience in the repossession of automobiles and promised him that they would repossess his.

Swarens, who was employed at a plant in Jefferson County, Kentucky, drove to work on December 2, 1963 and parked his car in a lot. After working all day, Swarens returned to the parking lot and found his car missing. He reported this to the police who advised him that Ford had repossessed his car. Swarens hitchhiked home that night.

The next morning Swarens visited the Louisville collection office. Kawa, the office manager of Ford's Louisville collection office, testified concerning what happened on this occasion. According to Kawa, the mistake of Ford was admitted and apologies were made to Swarens. Kawa said that he offered to return the car to Swarens. Kawa admitted, however, that this offer was conditional. The condition was that Swarens accept the car and his out-of-pocket expense necessitated by his trip to the Louisville office, and in consideration of the delivery and payment of expense execute and deliver a release to Ford exonerating Ford from further liability. According to Swarens, he was asked to "sign a blank piece of paper." In any event, Swarens refused Kawa's offer and left without his car. Ford retained the car, and when the next monthly installment payment came due, notified Swarens that he was in default. Apparently, sometime later, Ford sold the car and applied the proceeds to the debt. Swarens waited a considerable time after the loss of his car, but finally brought suit against Ford for the fair market value of the car at the time of its seizure and for punitive damages. The suit was commenced within the statutory period of limitations.

At the trial Ford confessed liability. The only issues tried concerned damages. Ford conceded that both the issues of compensatory damages and punitive damages should be submitted to the jury.

At the outset, we are faced with the undisputed fact that the motion and grounds for new trial alleging excessive damages was neither served nor filed by Ford within the time prescribed by CR 59.02. That rule requires the motion to be served not later than ten days from the date of the judgment. In this instance, the motion was served thirteen days from the date of the judgment. The prescribed ten-day period ended on Monday. The time of service of the motion was on the succeeding Thursday. The trial court did not strike the motion but, nevertheless, overruled it. CR 6.02 specifically provides that a court is not authorized to extend the time prescribed by CR 59.02. The plain purpose of CR 59 and CR 6 is to fix a definite time when judgments become finally effective and free from attack by the methods designated. See Clay, Ky.Prac., Rules of Civ.Proc.Ann. Rule 6.02, page 103. Moore is in accord with this view. See 6A Moore's Federal Practice (1966), page 3852.

In the instance where the motion for new trial is not timely served or filed, the trial court may not exercise any discretion and is obligated to deny the motion for lack of power to grant new trial relief. Cf. Harrison v. Clark, Ky., 431 S.W.2d 716. This conclusion is fortified by the provisions of CR 59.04 as amended effective July 1, 1969. That amendment expanded the authority of the trial court under the circumstances recited in the amendment to grant a motion for new trial for a reason not stated in the motion, but the amendment carefully

retained the requirement that in order to be eligible for this relief the moving party must first have served a motion for new trial within the time prescribed by CR 59.02. See Clay, Ky.Prac., Rules of Civ.Proc. Ann. Rule 59.04 (1969 Supplement, p. 27).

■■ We have held that whether damages awarded are excessive may not be considered on appeal if the appealing party has failed to present that question to the trial court. Commonwealth Dept. of Highways v. Williams, Ky., 317 S.W.2d 482; Kentucky & Indiana Terminal Railroad Co. v. Martin, Ky., 437 S.W.2d 944. One of the reasons for the rule is that the trial court must be given an opportunity to effectively rule on the issue. Where the trial court is without power to rule on the question, then no effective opportunity to correct any error is afforded on the trial level. In the case before us, if the trial judge had granted the motion for new trial on the ground that the damages awarded were excessive and this determination had been appealed, such action would have been held to be reversible error because the trial court would have acted in a situation in which it had no power. Therefore, we regard the trial judge's action in overruling the motion for new trial equivalent to a finding that the motion had not been timely served or filed, and hence the trial court was without power or opportunity to exercise discretion to afford the relief sought. We, therefore, conclude that we cannot consider the issue of excessiveness of damages awarded on this appeal.

■ It would seem that since Ford admitted liability, whether the trial judge's oral statements made during the trial were prejudicial could only be tested by determining whether excessive damages were awarded as a result of the statements. We have, nevertheless, examined the two particular incidents involving the witness Kawa about which Ford complains and find that in each instance the judge either merely attempted to prevent inadmissible hearsay evidence or attempted to elicit pertinent facts from an evasive witness.

There was nothing in the judge's statements to indicate that he was reflecting on the credibility of the evidence or that he was occupying anything other than a position of impartiality so far as the contentions of the contending litigants were concerned. We reject Ford's assertions of error concerning the statements of the trial judge during the testimony of Kawa. Cf. Wilson v. Commonwealth, Ky., 411 S.W. 2d 33.

■ Ford also complains that the admonition of the trial judge to the jury about the evidentiary significance of a letter, introduced and admitted during the testimony of Kawa, was erroneous. This letter written by Kawa to Swarens recited the events that transpired on the day Swarens visited Ford's Louisville collection office. It omitted any reference to the requirement of a release from Swarens to Ford which Kawa admitted actually occurred. The judge admonished the jury to consider the contents of the letter only "on the question of punitive damages." Ford objected to this admonition on the specific ground that Swarens was seeking compensatory damages for occurrences after the taking of the car and, therefore, the jury had the right to consider this evidence on the issue of compensatory damages. The instruction on compensatory damages given by the trial court limited Swarens' recovery for compensatory damages to the fair market value of the car at the time of its seizure. Ford seized and retained the car and insisted on its retention until Swarens would settle on Ford's terms and execute a release. The only possible evidentiary value of the letter is confined solely to the question of Ford's good faith and lack of wilfulness—the issue of punitive damages. We conclude that Ford was not prejudiced by the trial court's admonition.

■ Ford's final contention is that the instruction on compensatory damages is erroneous in that it fails to incorporate Ford's offer to return the car. What we have said concerning the contents of Kawa's letter applies equally here. Ford relies on

the case of Kasey v. Hofgesang, Ky., 333 S.W.2d 262. This authority is not applicable. In the Kasey case, a creditor secured by a lien on personal property had a contract right to take possession of the secured property upon default by the debtor. The creditor also had a contract right upon taking possession after a default by the debtor to retain the property "as his own absolutely or sell it to pay said indebtedness." The debtor defaulted. The creditor took possession of the property during the pendency of a suit concerning the debt. One month after the suit was filed the creditor notified the debtor by letter that he was waiving his right to retain possession of the property and that the debtor could use and enjoy the property until the litigation terminated and without prejudice to the rights or claims of the parties in the pending suit. The debtor did not take back the property. When the suit was subsequently decided in favor of the creditor, the debtor contended that the creditor had converted the property unreasonably because the creditor could have sold the property and subjected the proceeds of the sale to the satisfaction of his lien without court action. We rejected the debtor's contention and held that the creditor had acted reasonably under the circumstances. In the instant case, there was no default and there was no unconditional offer to return the property. The instruction on compensatory damages was correct.

Ford explains that this whole incident occurred because of a mistake by a computer. Men feed data to a computer and men interpret the answer the computer spews forth. In this computerized age, the law must require that men in the use of computerized data regard those with whom they are dealing as more important than a perforation on a card. Trust in the infallibility of a computer is hardly a defense, when the opportunity to avoid the error is as apparent and repeated as was here presented.

The judgment is affirmed.

All concur.